INTERNAL WATER HEATER COMPANY, INCORPORATED, PLAINTIFF-RESPONDENT, v. BURNS BROTHERS, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 19, 1934—Decided January 10, 1935.

For the appellant, *Charles E. Howell* (*Robert H. Brenner,* of counsel).

For the respondent, *Schotland & Schotland.*

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment of the Supreme Court (Essex County Circuit) based on a jury verdict in favor of the respondent, plaintiff below, and against the appellant, defendant below, in the sum of $18,276.51.

Notwithstanding the voluminous records and briefs the issue before the court below was rather narrow and limited. It was this: Did the purported contract upon which the plaintiff sought to recover from the defendant set out a valid and binding obligation between the respective parties thereto?

A resume of the proofs is necessary to understand more fully the situation herein presented.

Defendant was a large distributor of coal. On August 27th, 1930, it determined to add to its business a department for the installation and sale of equipment, namely, heaters, motor stokers, &c., to the end of fostering and increasing the use by the public and the sale by it to the public of soft (bituminous) coal. Accordingly its president, Mr. S. A. Wertheim, authorized and directed other officers of the company, Mr. C. R. Runyon, vice-president, and Clarence E.

Armstrong, assistant · secretary and assistant treasurer, to make the necessary arrangements for the establishment of this added department. Thereafter, Mr. S. A. Wertheim left for Europe. During his absence his brother, Benjamin Wertheim, vice-president and general manager of the defendant company, took charge of its affairs. It was so contended for the plaintiff, but denied by the defendant. For the plaintiff it was said that he was made acting president and general manager by a resolution of its board of directors; but no such resolution appears. At all events the proofs fully justified the finding that Benjamin Wertheim fully asserted and acted in pursuance of his superior authority for and in behalf of the defendant in this as well as in many other of its business matters.

The plaintiff, a going concern, seemed to have the set up desired by the defendant. It had, especially, an exclusive contract with a concern in Ohio, the Brownell Company, which made some of the necessary equipment, particularly a stoker known as the Brownell stoker. Mr. Armstrong appears to have been the treasurer of the plaintiff company when it was formed in 1928. In that capacity he performed one act; he signed one check. He also discounted customers' paper for the plaintiff. He disclaimed any interest in the plaintiff concern except as a creditor thereof. He brought the plaintiff and defendant together. As a result thereof plaintiff says that it made the contract in question with the defendant.

The contract consists of a carbon copy of a letter, the original of which, it is said, was retained by the defendant, and is as follows:

"September 10, 1930.

Messrs. Burns Bros.,
    50 Church Street,
    New York City.
Dear Sirs:

Confirming conversation between your Mr. Benjamin Wertheim, Mr. Runyon and Mr. Armstrong, and our Mr. Chase, we agree to turn over to you our entire line of contracts and equipment and our organization, together with such of our

inventory as you can use, on the following terms and conditions: You are to sell this equipment at your own prices in connection with your motor stoker and other apparatus, and allow us a commission of 10% on the gross selling price. You agree to keep in effect our various contracts and particularly the contract with the Brownell people, renewing them from time to time as they expire; the commission to be payable to us monthly on the 15th of the month following the sales and to continue until the sum of $25,000 is paid, after which we will be entitled to no more commissions.

Yours very truly,

INTERNAL WATER HEATER CO., INC.

O. K.

B. W."

Mr. Armstrong denied any participation in the actual signing of the contract. It was signed for the plaintiff by Mr. Chase; for the defendant by Benjamin Wertheim. The method used by the latter being the placing of his "O. K." on the contract with his initials "B. W." thereunder.

Defendant denied that it ever made the contract in question; that the purported execution and acceptance thereof by Benjamin Wertheim, in the manner stated was without authority. Defendant's contention, in effect, was that all the arrangements that it had with the plaintiff on the subject were oral, intended to be reduced in writing, but, in fact, not done so, and that these oral arrangements were terminable at will; that it merely agreed to purchase the equipment and inventory and pay for so much of it sold on a commission basis of ten per cent. of the gross selling price; that it had fully performed its undertaking in the premises; that Mr. Armstrong was interested in the plaintiff company; that he acted improperly, as an officer of the defendant company, in bringing about the instant arrangement, and, in a word, that the claim of the plaintiff was not a *bona fide* one.

For the plaintiff reliance was placed, as it necessarily had to be, on the contract as being a valid and binding obligation of the respective parties. Benjamin Wertheim, under oath,

admitted his execution and acceptance of the contract, his proof is corroborated, and he, likewise, asserted his complete authority to bind the defendant in the premises. It is true that he and others, who corroborate him, are in litigation with the defendant company—but that circumstance was properly pointed out to the jury.

The proofs further disclosed, and it was not controverted, that plaintiff promptly procured the assignment of its contract with the Brownell Company for the defendant. Plaintiff's entire organization moved over to and became a part of the defendant company. The latter advertised this added department; it paid the salaries of those connected therewith. From 1930 to January, 1932, it paid to plaintiff $3,387.99 for inventory, &c., and $8,711.12 as commission on the gross sales.

It is also uncontroverted that in 1931 the directorate of the appellant company changed. The Lehigh Valley and Delaware, Lackawanna and Western Coal Companies, miners and distributors of hard (anthracite) coal, were in control. Wertheim was out. And so were the others ultimately, excepting Mr. Runyon. The new directors, naturally, looked with disfavor on the business of installing and selling equipment for the purpose of increasing the use and sale of soft coal.

Defendant thereupon deliberately set out to rid itself of this department. It commenced to modify or restrict its activities; and in January, 1932, totally disbanded the department. It let the personnel thereof out; it surrendered to the Brownell Company the contract, the assignment of which plaintiff had procured for the defendant; and refused to make any further payments thereunder. Hence this suit for the difference between the $25,000 and the $8,711.12 received.

The learned trial judge in a comprehensive, fair and proper charge, free from reversible error, submitted the proofs and the law applicable thereto, to the jury for their consideration. And the latter, under the divergence of proofs, found, as they well could find, for the plaintiff in the amount stated.

A rule to show cause on the ground that the verdict was

excessive was allowed by the trial judge. The formal order discharging the rule recites that defendant also assigned and argued as a ground for a new trial that "the charge of the court to the jury, in relation to damages, was based on an improper theory of damages;" and that "the court having heard and considered *the argument of counsel and the testimony in the cause, together with the charge to the jury by the court,"* &c., dismissed the rule.

Appellant writes down fifty-six grounds of appeal; few are good in form and all are without substance. Eight points are argued by appellant, and, save as to points 4 and 6, no special reference is made to the particular grounds of appeal that are argued under the remaining points. Let it be marked that appellant again argues points 4 (motions to nonsuit and direct a verdict) and 6 (charges to the jury). These very same questions, according to the order discharging the rule, were argued on the return of the rule to show cause. The disposition of the rule to show cause is controlling; it is *res adjudicata* of the grounds assigned and argued as aforesaid. *Robins* v. *Mack International Motor Truck Corp.,* 113 *N. J. L.* 377, 386; 174 *Atl. Rep.* 551, and the cases therein cited.

Moreover, in the instant case the proofs fully justified the conclusion that was open to the jury to reach that defendant voluntarily and deliberately put an end to its contractual relationship with the plaintiff. That constituted a breach of the contract. For that breach it was liable in the damages sustained by the plaintiff.

"The act of a party in voluntarily placing it out of his power to perform a contract on his part, constitutes a breach thereof, for which an action may be brought, although the time for performance has not yet arrived under the terms of the contract." 13 *C. J.* 650, § 724, and the cases cited.

If the defendants received, as apparently the jury found that it did, all that it was entitled to receive under the contract with the plaintiff, it could not by putting an end thereto deprive plaintiff of the moneys due it thereunder. 13 *C. J.* 657, § 731f.

The principles of law applicable in order to bind a corporation on its contract, the action of the officers of a corporation within the apparent powers conferred upon them, the ratification of such a contract and the acceptance of the fruits thereof, are all too firmly established to be herein again restated. See *Erie Railroad Co.* v. *S. J. Groves & Sons Co., Inc.*, 114 *N. J. L.* 216.

Likewise the right of a witness, under oath, to testify as to his agency is beyond question. *Leonard* v. *Standard Aero Corp.*, 95 *N. J. L.* 235.

We have carefully considered all other points argued and find them to be without merit or substance; we shall not further discuss them.

Judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.