ELMER G. HOUSTON, TRADING AS S. E. & E. G. HOUSTON, PLAINTIFF-APPELLEE, v. WILLIAM E. SIEBERT (CORRECT NAME, WILLIAM ·C. SIEBERT), DEFENDANT-APPELLANT.

Submitted October 30, 1942—Decided January 22, 1943.

For the plaintiff-appellee, *Frank C. Scerbo*.

For the defendant-appellant, *Frederick Kentz*.

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment of the Supreme Court, Morris Circuit, entered upon the verdict of a jury in favor of the plaintiff (hereafter also called Hous-

ton) and against the defendant (hereafter also called "Siebert") in an action for broker's commissions for obtaining a buyer for the grocery business and a tenant for the store building owned by Siebert in Summit, New Jersey.

The grounds of defendant's appeal are that the trial court erred in refusing to grant a nonsuit and direct a verdict for defendant as requested by counsel for the defendant.

At the conclusion of plaintiff Houston's case, there was testimony to the effect that Houston was a real estate broker of Summit, New Jersey, and had entered into a verbal agreement with the defendant, Siebert, whereby Houston was to procure a tenant for the Siebert store at as near $500 per month as he could get and sell the stock, fixtures and business dollar for dollar at inventory and was to receive as compensation 5% of the gross rentals for the term of the lease and 5% of the price obtained for the stock, fixtures and business.

Houston interviewed various owners of general stores and brokers in New York and elsewhere and on September 29th, 1938, he wrote a letter to a Mr. Fred J. Muller, a representative of the Grand Union Company, to the effect that there was a grocery store in Summit (referring to Siebert's) on the market in an excellent condition which he thought possibly he might be interested in and expressed the hope that he would hear from him at an early date.

Between this date and October 20th, 1938, Muller and another gentleman called on Houston and told him they were representing the Grand Union Company; that they were looking for a site for a store in Summit. They stated their requirements and Houston discussed with them the town in general and told them the best store he had was the Siebert store. Houston showed the store to them and they looked it over thoroughly, noting its location, surroundings, and traffic conditions. The three then went back to Houston's office and Muller asked what rental Siebert would take. Houston told him that Siebert had in mind something around $500 per month and sale at inventory of the goods, fixtures and business. Muller's comeback was, "Offer him $250," and Houston said, "I don't think that will do." Muller replied, "Offer it and see how you make out."

The next day Houston saw Siebert and told him that the representatives of the Grand Union Company had looked the store over and seemed much interested and had made a tentative offer of $250 per month rental. Siebert said that he wouldn't consider that and it would have to come higher. Houston said, "Yes, I know that." After further discussion Houston said, "Well, why don't you think it over for a couple of days and give me a definite proposition of just what we can do?" Siebert said, "I will do that."

On October 20th, 1938, Houston wrote a letter to Muller, care of Grand Union Tea Company, Teaneck, New Jersey, the first paragraph of which was as follows: "With reference to your visit to Summit the other day, I have taken up the matter of the store location with Mr. William Siebert regarding his store on Springfield Avenue. I discussed the whole matter with him, and he asked us to give him a few days to think it over and will then give me an answer." Not hearing from Siebert for several days, Houston met him on the street and told him he had been waiting to hear from him and asked him what he had on his mind. Siebert said, "I have something hot on," adding, "Lay off for a few days, and I will let you know." Houston did as he was directed for a while and then spoke to Siebert again about the proposition, and Siebert said, "The situation is just about the same." This is the last time Houston saw Siebert, and the next Houston knew about it was what he read in the *Summit Herald* (the local newspaper) that the Grand Union Company had taken over Siebert's food market, whereupon Houston wrote a letter to Siebert, dated March 17th, 1939, telling him what he had read in the *Summit Herald* and reminding him that he had given the Grand Union Company full information regarding Siebert's store and had presented to Siebert an offer from the company which Siebert had turned down and asked Siebert where he (Houston) "fit into the picture." Houston's testimony was that up to this time he was working on the proposition off and on and devoted a good deal of time to it and that there was never any breaking off of negotiations by Houston with the Grand Union Company except to the extent advised by Siebert.

Muller was called as a witness for plaintiff as well as by defendant; and, when testifying for plaintiff, admitted the conference with Houston and his showing him the Siebert store, and Muller said that sometime in November, 1938, he made a report about it to his superiors of the Grand Union Company.

The defendant, Siebert, called by the plaintiff as his witness, testified that he had entered into a written agreement with the Grand Union Company under date of March 7th, 1939, for the sale of the merchandise, fixtures and equipment for $16,000 (which agreement was offered in evidence by plaintiff) and also that he at the same date leased the store property with the appurtenances to the Grand Union Company (which lease was also offered in evidence) and showed the term to be for five years, from March 20th, 1939, at $350 per month.

The terms of the sale and lease of March 7th, 1939, were substantially the same as, or had as their foundation, the terms which Siebert had given to Houston, except that Houston was to get "as close to $500 a month as he could," under the lease, but that figure was not an absolute one.

At the conclusion of the plaintiff's case defendant moved for a nonsuit on the ground that there was no evidence showing that "Houston was the efficient cause for procuring the sale or the lease." The trial court denied the motion holding that the testimony presented a jury question as to whether Houston merely introduced the parties or whether he was the procuring cause.

The defendant then presented his case, and if there were any doubt that a jury question arose from the plaintiff's case, none remained at the conclusion of the entire case. J. Spencer Weed, the president of the Grand Union Company, testifying for the defendant, said that part of the duty assigned to Muller was to spot locations for stores for the company. Weed said that sometime in February, 1939, he requested his personal attorney, Donald Bourne, to see Siebert and find out what he was willing to do about renting his store and selling his business, and that the agreement and lease, of March 7th, 1937, resulted; that he never discussed the matter with Houston.

Bourne testified that at the request of President Weed he began February, 1939, negotiations with Siebert which culminated on March 7th, 1939, in the sale of the stock, fixtures and business, and leasing of the store by Siebert to the Grand Union Company; that he never had any contact with Houston at any time during the negotiations.

Both Siebert and Bourne said that at their first conference Siebert asked Bourne whether he was expecting a commission and Bourne said that he was not, that he was representing the Grand Union and whatever compensation he received would be paid by them.

Siebert admitted making the agreement with Houston on the terms stated by Houston and that he had numerous conferences with Houston concerning the sale of the business and leasing of the store but said that their discussions all had to do with a sale and lease to W. T. Grant Company and not to the Grand Union Company.

It seems unnecessary to further review the facts, which were highly conflicting.

When the defendant's case was in, he made a motion for a direction of a verdict based substantially on the same grounds as presented for a nonsuit. This motion was denied for the same reason.

The Supreme Court in *Dickinson* v. *Walters,* 100 *N. J. L.* 62, citing decisions of this court in *Clark* v. *Griffin,* 95 *Id.* 508, and *Steinberg* v. *Mindlin,* 96 *Id.* 206, said: "The law is firmly settled in this state that a real estate broker earns his commission when he secures a buyer on the seller's terms, either as originally propounded or as settled by agreement between the seller and buyer." In accord, *Queen* v. *Jennings,* 93 *Id.* 353; *Walsh* v. *Isgro,* 121 *Id.* 165; *Ganley* v. *Kalikman,* 105 *Id.* 311; *affirmed,* 106 *Id.* 237; *Schlesinger, Inc.,* v. *Burstein Realty Co.,* 123 *Id.* 190.

The *Clark* v. *Griffin* case, *supra,* also holds that whether the plaintiff was the procuring or efficient cause of the sale, there being doubt upon that point, the doubt must be solved by the jury under proper instructions from the trial court.

This court in *Littman* v. *Slack,* 103 *N. J. L.* 459, cited the decision of the late Chief Justice Beasley, in *Vreeland* v.

*Vetterlein,* 33 *N. J. L.* 247, as setting forth the rule establishing the right of a broker to receive and recover commissions. This case has been frequently cited by our courts and particularly the following quotation:

"It is certainly true, as a rule of law, that, under ordinary circumstances, where a broker, employed to sell property, brings about an introduction of a buyer, and when a negotiation, resulting in a purchase, ensues on that foundation, the owner and the buyer cannot, by any arrangement, disappoint the claim of the agent for remuneration. If this could be done, it is obvious the agent would, in all cases, be in the power of his employer, who, by taking matters into his own hands, could, at will, defeat the just expectations and equitable rights of the broker or middleman. In this class of cases, the question then always is, whether, under the peculiar conditions of the given case, the agent was the efficient cause of the sale; and, where there is real doubt upon that point, such doubt must be solved by the jury. To this extent there seems to be entire uniformity in the decisions."

The only case offered by defendant in support of his contention that no jury question arose from the evidence presented was *Murray Apfelbaum, Inc.,* v. *Bernstein,* 104 *N. J. L.* 664. The facts in the Apfelbaum case were very different from the facts in the instant case. In the Apfelbaum case the plaintiff-broker had made only one attempt to bring about a satisfactory agreement between the landlord and prospective tenant but had failed to do so. As a result, no lease was made and the broker gave up trying to get the parties together and the matter was dropped. It was admitted that the negotiations between the lessor and the lessee were terminated. Seven and one-half months later the parties made an agreement on an entirely different basis than the one submitted by the broker, and this court held that the commissions of a broker were not earned by the mere introduction of a buyer to the owner or lessor of real estate, but that the broker must have been, in the words of the cases, the efficient procuring cause of the contract between seller and purchaser, lessor and lessee. See, also, *Tepperman* v. *Polster,* 113 *Id.* 14. In the instant case there was testimony from which an inference could well be

drawn that there was no breaking off of negotiations between Siebert and the Grand Union Company. Whether the agreement between Houston and Siebert had been abandoned was also a question for the jury, *Freeman* v. *Van Wagenen,* 90 *Id.* 358. While there is a lack of direct testimony as to what happened between November, 1938, and February 7th, 1939, the jury could find or properly infer that in accordance with Siebert's instructions, Houston was temporarily "laying off" until he heard from Siebert and that in the meantime Siebert was dealing behind Houston's back directly with the Grand Union Company in order to save commissions.

We are of the opinion that there was proof from which it could be found that Houston was the efficient and procuring cause of the sale of the stock, fixtures and business, and renting of the store building in question to the Grand Union Company and although this was flatly and substantially contradicted, nevertheless, it was for the jury to find what the truth and the facts were.

We conclude, therefore, that there was no error in the denial of the motions for nonsuit and directed verdict.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.