ROSE MOSCOWITZ, EXECUTRIX OF THE ESTATE OF MARTIN MOSCOWITZ, DECEASED, PLAINTIFF-APPELLANT, v. MIDDLESEX BOROUGH BUILDING & LOAN ASSOCIATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1952—Decided February 13, 1952.

Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.

*Mr. Stephen V. R. Strong* argued the cause for appellant (*Mr. Morris Roth,* attorney).

*Mr. John J. Rafferty* argued the cause for respondent (*Messrs. Rafferty & Blacher,* attorneys; *Mr. Philip Blacher,* of counsel).

The opinion of the court was delivered by

JAYNE, J. A. D.  This action was submitted to the judge of the Superior Court, Law Division, for determination

without a jury upon consideration of the following stipulation of facts:

"1. Plaintiff's decedent, Martin Moscowitz, was in possession and control of a two family dwelling located in Middlesex Borough, Middlesex County, N. J., under a contract to purchase same from the defendant Middlesex Borough Building & Loan Association, which contract was prepared by the late John P. Cullen, Attorney for the Middlesex Borough Building & Loan Association and was executed by the parties on August 19, 1941. Both apartments in the dwelling were rented and occupied by tenants of plaintiff's decedent.

2. The terms for payment of said contract were: 'The balance of said purchase price is to be paid by the Buyer paying the sum of $20.00 a month on the second Tuesday of each and every month at the office of the Seller in Middlesex Borough, New Jersey; beginning September 9th, 1941, from which is first to be deducted interest on the unpaid balance of the purchase price at the rate of 5%; second, fire and public liability insurance premiums; the balance to be applied in reduction of the purchase price: The Buyer may make larger payments than the said $20.00 or may pay off the entire balance at any time before due, and when the amount due on the purchase price is reduced to $1,800.00, the Buyer shall be entitled to receive a deed of conveyance for the said premises and give back in payment of the balance due a good and sufficient mortgage to the Seller.'

3. The contract further provided in the event of default: 'It is understood and agreed that in case the buyer becomes in arrear with any of the payments herein agreed to be made, including the fire and public liability insurance premiums, taxes and sewer assessment installments, for the period of sixty days from and after the time when the same are due, the Seller may declare all rights of the Buyer to receive a deed under this contract at an end, and in such case the Buyer shall become a tenant of the Seller under an ordinary monthly letting for a rental of $20.00 per month, and the parties hereto agree that in such case any District Court may have jurisdiction to remove the said Buyer or any one holding under him. The failure of the seller to exercise its option of revocation in case of one or more defaults shall not preclude the exercise of this option in case of later defaults, and the remedy through the District Court herein mentioned shall not preclude the Seller from any other remedy it may have in law or equity.'

4. The terms for payment, under said contract, were strictly followed, and as a result thereof, in due course, a deed was executed and delivered by the defendant, Middlesex Borough Building & Loan Association.

5. On October 6, 1945, Martha Sullivan and her daughter Catherine Cloos, formerly Catherine Sullivan, members of the general

public, visited the premises which were the subject of the contract referred to in paragraph one hereof, and in the course of said visit, both were injured.

6. Martin Moscowitz died May 4, 1947, and shortly thereafter Rose Moscowitz qualified as his executrix before the Somerset County Surrogate, under his will, in which she was named sole beneficiary.

7. The said Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan, instituted an action in the New Jersey Superior Court, Middlesex County, Law Division, to recover damages for personal injuries suffered in the accident on the premises October 6, 1945, and named as defendants therein, The Middlesex Borough Building & Loan Association, Rose Moscowitz, Executrix of the Estate of Martin Moscowitz, deceased, and Rose Moscowitz. The action alleged negligence, and at the trial thereof on December 14, 1949, was dismissed against the defendants Middlesex Borough Building & Loan Association and Rose Moscowitz and the jury returned its verdict in favor of Martha Sullivan for Seventy-five Hundred Dollars ($7,500.00) and Catherine Cloos, formerly Catherine Sullivan, for Five Hundred Dollars ($500.00) against the defendant Rose Moscowitz, executrix of the estate of Martin Moscowitz, the plaintiff herein. Subsequently, on January 12, 1950, the judgment of the plaintiff Martha Sullivan was reduced by Order of the Court to $5,000.00. The verdict in favor of Catherine Cloos, formerly Catherine Sullivan was undisturbed.

8. The plaintiff herein, Rose Moscowitz, executrix of the Estate of Martin Moscowitz, deceased, appealed from the entry of the judgments against the Estate to the New Jersey Superior Court, Appellate Division, which on November 15, 1950, affirmed the judgments. The opinion of the New Jersey Superior Court, Appellate Division, has not been reported, but is on file in the action bearing Docket No. A-277-49.

9. The defendant Middlesex Borough Building & Loan Association which was also a defendant in the suit of Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan had not procured public liability insurance, insuring Martin Moscowitz against claims of the general public. The action of Martha Sullivan and Catherine Cloos formerly Catherine Sullivan against the defendant Middlesex Borough Building & Loan Association was dismissed by the Court on the ground that at the time of the injuries sustained by the two Sullivans, the defendant Middlesex Borough Building & Loan Association had divested itself of control of the premises to Martin Moscowitz by virtue of and under the terms of the contract referred to in paragraph four herein.

10. Prior to the accident mentioned in Paragraph 5 hereof, the defendant purchased fire insurance and indicated the interest of plaintiff's decedent as vendee under the contract. The defendant purchased public liability insurance for its exclusive protection.

11. Thereafter, the plaintiff herein, as such executrix settled her liability under the judgments of Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan for payment to them of the sum of Forty-five Hundred Dollars ($4,500.00) and secured thereby satisfaction pieces for the two judgments. Additionally, plaintiff has spent Seventeen Hundred Sixty-four Dollars and Eighty-one Cents ($1,764.81) as attorney's fees, to Court Stenographers and for printing her appeal in the defense of the action of the two Sullivans against her and her appeal therefrom. The aggregate, Six Thousand Two Hundred Sixty-four Dollars and eighty-one cents ($6,264.81), is the extent of plaintiff's damage.

12. This contract, referred to in paragraph one is an exhibit in evidence and marked P-1, (2/20/51-D)."

The plaintiff alleged that the defendant under and by virtue of the terms of the written contract of August 19, 1941, was obligated to procure "public liability insurance" not only for its protection as vendor but also for the indemnification of the vendee. The trial judge resolved *per contra* and granted judgment for the defendant without costs. 14 *N. J. Super.* 515 (*Law Div.* 1951).

██ While it is to be appreciated that the cardinal rule in the interpretation of contracts is to ascertain and effectuate the common intention of the parties, yet where the parties have composed a written memorial of their bargain, the intent that controls is that expressed or apparent in the writing. The parties are normally bound by the language employed regardless of some different intent or divergent understanding entertained by either party. *Corn Exchange, &c., Phila. v. Taubel,* 113 *N. J. L.* 605, 609 (*E. & A.* 1934).

█ The courts are not at liberty to make a better contract for a party than that which he has voluntarily entered into or alter it for his benefit to the detriment of the other party. *Kupfersmith v. Delaware Ins. Co.,* 84 *N. J. L.* 271 (*E. & A.* 1913); *Smith v. Fidelity & Deposit Co.,* 98 *N. J. L.* 534 (*E. & A.* 1923); *Frisbie Throwing Co. v. London Guarantee, &c., Co.,* 105 *N. J. L.* 613 (*E. & A.* 1929); *Caruso v. John Hancock, &c., Insurance Co.,* 136 *N. J. L.* 597 (*E. & A.* 1948); *James v. Federal Insurance Co.,* 5 *N. J.* 21 (1950); *Herbert L. Farkas Co. v. N. Y. Fire Ins. Co.,* 5 *N. J.* 604 (1950).

The manifest objects and purposes of the contract must be recognized. In the present transaction it was the obvious object and purpose of the vendor ultimately to receive a price of $2,800 net for the premises. Interest was naturally attached to the deferred payments. Protection *ad interim for the defendant* against the accrual of unpaid taxes and assessments, such foreseeable losses that it might sustain from fire and such public liability as it might incur by reason, if any, of its reserved legal title to the premises constituted a security *which the defendant desired* and the cost of which the plaintiff additionally obligated himself to discharge.

Indubitably the determination of the amount of the fire and liability insurance was a privilege accorded exclusively to the defendant, for which the plaintiff agreed to pay the premiums. This unqualified privilege would seem rather to negate the implication that it was intended that the defendant was authorized, much less obligated, to procure in some undetermined amount indemnification for such losses as the vendee might personally sustain by reason of his own occupancy, possession, and control of the premises.

We can perceive a reason for "indicating the interest of the plaintiff's decedent as vendee under the contract" in the fire insurance policy because of his equitable title to the premises. But is there any logical reason to imply *solely therefrom* that it was contemplated that the vendor should exact from the vendee premiums for insurance protecting the vendee from his own liability arising out of his own negligent maintenance of the property? We think not.

The burden rested upon the plaintiff to establish the alleged contractual obligation of the defendant to a reasonable degree of certainty. Upon our consideration of the language of the contract, we conclude that existence, if any, of the obligation is entirely too vague and dubious to warrant its enforcement in the particular asserted by the plaintiff.

Judgment affirmed.