47 N.J. Super. 185 (1957)
135 A.2d 569
WARREN MACK, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JOSEPH G. REVICKI, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1957.
Decided October 28, 1957.
*187 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. William A. Fasolo argued the cause for plaintiff-respondent and cross-appellant (Mr. Milton Lasher, attorney and of counsel; Mr. William Fasolo on the brief).
Mr. Ralph W. Chandless argued the cause for defendant-appellant and cross-respondent (Messrs. Chandless, Weller & Kramer, attorneys; Mr. Chandless of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff, a real estate broker, instituted the present action to recover a commission for the sale of certain real estate owned by the defendant. The commission in the aggregate totals the sum of $11,090.40. The defendant admits that he agreed to pay a commission provided the sale was consummated at the price of $7,000 an acre. He denies that the plaintiff performed his agreement and states that it was necessary to negotiate a new contract with the purchaser on less favorable terms. Plaintiff was awarded summary judgment for a part of the commission and the defendant appeals and the plaintiff cross appeals.
The facts are substantially undisputed. Warren Mack entered into a written commission agreement dated May 16, 1956, with the defendant Joseph G. Revicki, the owner of the real estate in question. The commission agreement recites that Mack negotiated the sale of the premises to Sylvan Builders, Inc., and that a written contract, dated the same day as the commission agreement, was entered into by the defendant for the sale of the property to Sylvan Builders, Inc. The commission agreement further states that Revicki recognized Mack as the "broker who consummated the contract *188 for the sale and who is entitled to receive a commission for the sale in the event the title is closed." The agreement expressly provided, in consideration of the premises, as follows:
"1. Joseph G. Revicki does hereby agree to pay a commission of 6 1/2% of the total purchase price as established by the contract for the sale of the said premises, less $2050.00, payable only if, when and as title passes, as follows:
(a) At the time of the closing of title of said premises, 6 1/2% of that portion of the principal sum of the purchase price paid by the purchaser to Joseph G. Revicki, on the agreement of sale, and
(b) At the time each and every payment of the mortgage principal is made, 6 1/2% of the principal of each and every payment made to Joseph G. Revicki on the purchase money mortgage set forth in the attached agreement for sale between Joseph G. Revicki and Sylvan Builders, Inc. * * * Notice of each mortgage payment with full particulars and payment of the required commission shall be immediately given by Joseph G. Revicki to Warren Mack upon such mortgage payments."
Revicki, by his written contract dated May 16, 1956, agreed to sell to Sylvan Builders, Inc., the premises consisting of 28.88 acres of vacant land for "$7,000 per acre or proportionate part of an acre." The purchaser, pursuant to the contract, paid the deposit of $20,000. The contract provided for the closing of title on August 15, 1956, but the title not having closed, the defendant by letter made time of the essence for the title closing which was consummated on January 16, 1957. On the closing of title the purchaser was allowed an abatement of $10,000 on the purchase price and he executed to the defendant a purchase money mortgage for the balance due of $143,533.60 after an additional payment of $28,045.70, including adjustments for taxes and revenue stamps.
Subsequent to the execution of the commission agreement and contract of sale on May 16, 1956, the following events took place. On November 29, 1956 the defendant's attorney wrote to Mack stating that he recognized him as the broker and that if the contract was assigned to another developer and there was another broker, no additional broker's commission would be paid by Revicki and any adjustment of *189 commissions would have to be made with Mack's consent and approval. It further stated that Revicki was becoming impatient with the delay in the transaction; that the compensation for commission was dependent upon final consummation of the sale and "we would suggest that you get on the job and do whatever you may be able to in order to get this matter closed." On December 7, 1956 Mack replied that no representative of the vendee had communicated with him regarding an assignment of the purchase contract, and that there were no further details to receive attention as the title was ready to be closed. Thereafter, no further letters were addressed to Mack.
In response to the defendant's letter of December 26, 1956, making time of the essence to close the title, the vendee's attorney replied on January 9, 1957, stating that "the cost of improvements as required by the municipality * * * exceeds by approximately $30,000" the cost as estimated on the representations of the defendant and requested that there be an abatement in the purchase price in the amount of the excess cost. Revicki's attorney, under date of January 14, 1957, replied to the vendee refusing to recognize any obligation to an abatement in the purchase price.
The closing of title having taken place on January 16, 1957 (the price being abated by $10,000), Mack's attorney by letter of January 18, 1957, addressed to Revicki's attorney, requested "payment of the commission of 6 1/2% as required by the commission agreement between our clients," and further requested a copy of the closing statement and that there be forwarded to him the "commissions payable to my client as they fall due in connection with future installment payments of the purchase price."
Revicki, by his attorney, replied on January 29, 1957 that Revicki was "very unhappy about the transaction" as Mack was to secure a purchaser for the property at $7,000 an acre, and defendant "was required to sell the property at a reduced price." The letter further stated, "He considers that the loss sustained by him arose from the failure of the broker to produce a buyer on the terms agreed upon and *190 that consequently such loss should fall upon the broker rather than upon him."
The defendant having paid no part of the commission, the plaintiff instituted the present suit for the full amount thereof, $11,090.40, with interest. After defendant answered, the plaintiff moved for summary judgment.
The correspondence and affidavits disclose that Mack had requested and was promised that he would be advised of the closing date of title, but he never received such advice. The attorney for the vendee by affidavit stated that he had wanted Mack present at the closing because of the additional drainage costs, part of which he thought Mack might be willing to absorb from his commissions, but was told by Revicki's attorney that the brokerage matter was of no concern to anyone other than Revicki and the broker.
Revicki's affidavit, in opposing the summary judgment, denies that the vendee's attorney had requested Mack's presence at the closing. The affidavit further states that Mack "at no time had anything to do with effecting the sale which was made. As a matter of fact, aside from the time when he was present on May 16, 1956 during the preparation of the contract with Sylvan Builders, Inc., I never saw or heard of Mack and to my knowledge he never did anything further about selling my property."
Defendant's attorney by affidavit states that on January 15, 1957 he spoke to the plaintiff's attorney and told him that the defendant would make a tender of the deed the following day, in accordance with the notice making time of the essence. The president of the corporate purchaser states in his affidavit that he demanded the presence of the broker, Mack, at the closing because "we felt that he [Mack] might absorb a part of the reduction of $10,000 of the purchase price." His affidavit further states that at the closing the vendee was willing to rescind the contract but the defendant refused and demanded full performance of the contract, and finally agreed to an adjustment in the reduction of the purchase price in the sum of $10,000. The vendee's attorney by affidavit states that on the closing the vendor's *191 attorney requested him not to inform Mack that "the closing was in progress and not request his presence at the closing." His affidavit further states that at no time did defendant repudiate his rights under the contract but insisted upon the enforcement of his rights under the contract which eventuated in the title closing.
It is observed that, while of no moment in our determination of this litigation, Mack by his affidavit states that his commission agreement was prepared by the defendant's attorney. Mack's attorney and the attorney for the vendee, each by affidavit, state that the commission agreement was prepared by and at the office of the defendant's attorney, and immediately after being typed it was signed by both the plaintiff and the defendant. However, the affidavit of defendant's attorney denies that the commission agreement was prepared by him, although he signed his name as a witness to the execution by Revicki.
The trial judge granted summary judgment in favor of the plaintiff in accordance with the terms of payment provided in the commission agreement, for the sum of $3,160.72 with interest from January 16, 1957, being the commission at the stipulated rate on the amount paid down at the closing, and that "Mack is and will be entitled to his full commission when the same falls due under the terms of the commission agreement * * *."
The defendant appeals the question of liability and the plaintiff cross-appeals from that part of the summary judgment which limited the amount recovered by the judgment to $3,160.72, instead of the full commission of $11,090.40.
The defendant argues that the commission agreement provided for no acceleration of payments and that he never repudiated the commission agreement. His contention is that the plaintiff failed to perform his agreement to produce a buyer who would purchase at the agreed price of $7,000 per acre, and that therefore there is no liability to pay any commission. This argument proceeds on the theory that the contract of sale provided for the selling price to be $7,000 per acre and, the defendant having sold his property *192 with an abatement of $10,000 from the gross price, the plaintiff therefore did not procure a purchaser in accordance with the commission agreement. The reduction of the gross selling price was the defendant's own doing, made at the closing of title when the plaintiff was not present. It does not appear that the plaintiff participated in any of the negotiations leading to the reduction. And, even if he had, it would be of no consequence that defendant saw fit to close the title for a lesser amount than he had agreed to at the time of sale. There is no proof of any significant break in the negotiations which culminated in the sale and closing as the result of the broker procuring the purchaser. Loeb v. Peter F. Pasbjerg & Co., 22 N.J. 95, 100 (1956); Winter v. Toldt, 32 N.J. Super. 443, 447, 449 (App. Div. 1954).
There is no merit in the defendant's contention that the plaintiff was not the "procuring or efficient cause" in negotiating and consummating the sale by defendant to Sylvan Builders, Inc. Having consummated the sale to the same purchaser procured by Mack, even at a lesser price, the commission is owing. Vreeland v. Vetterlein, 33 N.J.L. 247 (Sup. Ct. 1869); Loeb v. Peter F. Pasbjerg & Co., supra. Pertinent here is Weinstein v. Clementsen, 20 N.J. Super. 367, 372 (App. Div. 1952) where the court stated:
"But where the broker presents a prospective buyer and, on that basis, negotiations ensue, even though the broker takes no part in them, and a sale results, then ordinarily the broker is considered to be the efficient cause."
The facts cannot deprive the plaintiff of his bargain  the defendant entered into a written contract with the purchaser procured by the plaintiff and closed the title. The defendant voluntarily agreed to a negotiated reduction in the selling price and that is no valid reason why plaintiff should be deprived of his commission. It has long been the rule that a broker earns his commission when by written agreement he produces a buyer, able and willing to purchase on terms satisfactory to the owner. Vreeland v. Vetterlein, supra; Houston v. Siebert, 129 N.J.L. 468, 472 (E. & A. 1942). The same *193 rule applies even though the owner sells his property for less than the authorized price. Ganley v. Kalikman, 105 N.J.L. 311 (Sup. Ct. 1928), affirmed 106 N.J. 237 (E. & A. 1929); Winter v. Toldt, supra. In principle, the result should not be different merely because the obligation for commission was contingent upon the closing of title, if in fact title did close.
The cross-appeal concerns the applicability of the doctrine of anticipatory breach in a situation where the complaining party has fully performed his part of an agreement and the other party is only obligated to make money payments in the future. It is argued by the defendant there can be no anticipatory breach as applied to an agreement which the complaining party has fully performed, relying upon Smyth v. United States, 302 U.S. 329, 58 S.Ct. 248, 82 L.Ed. 294, 295, 114 A.L.R. 807 (1937). The defendant's argument is that it is not within the province of the trial judge to make a new commission agreement or to rewrite the agreement. It is fundamental that the court will not make a better contract for the parties than they have voluntarily made for themselves, nor will it alter their contract for the benefit or detriment of either, but will endeavor to give effect to their intention. Moscowitz v. Middlesex Borough Bldg. & Loan Assn., 18 N.J. Super. 182, 186 (App. Div. 1952).
In determining whether or not the plaintiff is presently entitled to a judgment for the full amount of the commission of $11,090.40, rather than the amount of commission calculated on the portion of the purchase price already paid to the defendant by his vendee, we observe that the agreement contains no acceleration clause in the event of default, nor was any part of the mortgage assigned to the plaintiff as security for his commission. The balance of commission was to be paid, after the initial payment of commission, in future installments as stipulated in the agreement. The plaintiff urges that the doctrine of anticipatory breach applies, since the defendant, as indicated by the pleadings and the facts stated in the affidavits, no longer recognized the plaintiff as the broker who negotiated the sale, and thus repudiated the commission agreement, thereby causing a material *194 breach of the agreement. Plaintiff also urges that having completed all of the contractual duties to be performed by him, and the amount of commissions being liquidated, there is nothing further to be done, except payment to him of the full amount of commission.
Plaintiff relies heavily upon Internal Water Heater Co., Inc., v. Burns Bros., 114 N.J.L. 368 (E. & A. 1934), which is distinguishable; there the agreement between the parties was terminated by the defendant before its completion. The performance on the part of the defendant was for more than the payment of money. It was for the sale of certain goods, upon which a 10% commission was to be paid, until an agreed upon amount was reached. When the defendant therein disbanded the facilities for selling the goods, it precluded itself from performing under the agreement. In the case sub judice, we had originally a bilateral agreement, each with an obligation to perform, and at the title closing, the plaintiff having completed his services by producing a buyer who substantially completed his purchase contract, the transaction between the vendor and broker became in effect unilateral, the only matter remaining to be completed being the payment by the defendant to his broker for the commissions he had earned  a creditor-debtor relationship. The essentially distinguishing feature of this case is that the bargain of the parties was that defendant would be allowed to make payments of commission at times when he would be in funds by receipt of the mortgage installment payments. To allow judgment for the full amount at once would in effect be penalizing him for a breach beyond compensating plaintiff for what he is presently entitled to under the agreement.
The plaintiff relies upon other cases which we do not consider pertinent. They involve the rule of anticipatory breach in the sense of excusing the plaintiff from any further performance on his part, entitling him to sue at once for damages for a total breach of contract.
The doctrine of anticipatory breach has generally been considered not applicable where the contract is fully performed by one of the parties and nothing further remains *195 to be done by the other party beyond the payment of moneys in the future. The weight of authority supports this view. Annotation, 105 A.L.R. 465, 12 Am. Jur., Contracts, § 391, p. 969, Restatement of the Law, Contracts, § 316, p. 470; Sheketoff v. Prevedine, 133 Conn. 389, 51 A.2d 922, 171 A.L.R. 1009 (Sup. Ct. Err. 1947); 5 Williston, Contracts, § 1328, 1329, pp. 3832 et seq. Contra, 4 Corbin, Contracts, §§ 962 to 967, p. 864 et seq. Contrast the treatment of this problem by Mr. Justice Cardozo's opinion in Smyth v. United States, supra [302 U.S. 329, 58 S.Ct. 253], where in discussing the application of the doctrine of anticipatory breach he says, "the rule of law is settled that the doctrine of anticipatory breach has in general no application to unilateral contracts, and particularly to such contracts for the payment of money," with his opinion in New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971 (1936).
The concept that the unilateral nature of plaintiff's obligation at the time of suit, or the circumstance that only money payments remain to be made by defendant, are of themselves sufficient to preclude a judgment for full damages for anticipatory breach, has been criticized. See 4 Corbin, Contracts, op. cit. supra. We rest our decision in the present case not on those factors, but upon the view that the delayed payment of the commissions was not in any way related to any other performance by either of the parties, and was expressly bargained for, and that no consideration of justice to plaintiff in the circumstances of this case calls for penalizing the defendant by accelerating his obligation.
Judgment affirmed.