LEO FLASTER, PLAINTIFF-APPELLANT, v. LINCOLN TIDE-
WATER TERMINALS ET AL., DEFENDANTS-RESPOND-
ENTS.

Submitted October 27, 1939—Decided January 25, 1940.

For the appellant, *McCarter, English & Egner* and *James
R. E. Ozias.*

For the respondent city of Newark, *James F. X. O'Brien*
and *Thomas M. Kane.*

For the respondents Lincoln Tidewater Terminals and
Newark Tidewater Terminal, Inc., *Lum, Tamblyn & Fairlie*
and *James Raymond Berry.*

The opinion of the court was delivered by

DONGES, J. This is an appeal from a judgment of nonsuit
entered in the Supreme Court, after a trial at the Essex
County Circuit.

Plaintiff, a real estate broker, sued 'to recover commissions
for the asserted leasing through him of the so-called Army
Base at Port Newark by the city of Newark to the Newark

Tidewater Terminal, Inc. The defendants are the city of Newark, Lincoln Tidewater Terminals and Newark Tidewater Terminal, Inc., the latter being a corporation created by the Lincoln Tidewater Terminals for the purpose of leasing and operating the property.

The complaint is in ten counts. The first five are against the Lincoln company and seek recovery on (1) an express contract to pay the customary broker's fee; (2) an engagement to pay the reasonable value of the services. It is alleged that the defendant willfully and fraudulently, and for the purpose of preventing plaintiff from earning a commission, secretly entered into negotiations direct with the city of Newark, and thereafter entered into the lease of the premises in the name of its nominee, whereby plaintiff was deprived of the commission to which he is entitled. The next three counts are against the city of Newark, and allege generally an agreement to pay the customary broker's commission and an obligation to pay the reasonable value of the services rendered, and that the city "wrongfully, maliciously and improperly induced the Lincoln Tidewater Terminals to drop and ignore plaintiff as its broker and to deal directly with the city of Newark in negotiating the terms of the leasing of said property to the exclusion of plaintiff." The ninth and tenth counts charge a conspiracy of the three defendants to deprive plaintiff of his commissions and to injure him in his business.

It is undisputed that a lease was entered into between the city and Newark Tidewater Terminal, Inc., on September 1st, 1936, at an annual rental of $100,000 for a term of fifteen years. Plaintiff claimed commissions of five per cent. amounting to $75,000.

The first point urged is that there was a jury question as to plaintiff's claim against Lincoln for the reasonable value of services rendered to that company. The express contract allegation is not pressed. The claim is stated in appellant's brief as follows: "It is true that there was no express agreement between the plaintiff and the Lincoln Tidewater Terminals that the plaintiff would receive any fixed compensation for his services. Nothing was said with regard to compensation. Nothing had to be said. It was implied by law that

plaintiff would receive the reasonable value of his services." This is ordinarily true where one performs services for another of a character and under circumstances that ordinarily are expected to be paid for. But here plaintiff was, as regards Lincoln, undertaking to perform services for a prospective lessee, and, in his testimony, he stated that it was not usual for a broker to look to a lessee for payment of commissions but that they were paid by the lessor. He further testified that it was not customary to look for payment from a lessee unless there was a specific agreement therefor, and admitted there was no such agreement in this case. It seems clear that plaintiff was not entitled to recover against the lessee either upon an express contract or upon an implied contract.

The next point urged is that there was a jury question as to plaintiff's claim in contract against the city. The case is barren of proof that the city bound itself in any way that plaintiff may rely on. There was no formal resolution or other action authorizing plaintiff to proceed on behalf of the city and agreeing to pay him. Plaintiff testified that Mayor Ellenstein told him a commission would be payable if he negotiated the lease, but Ellenstein denied obligating the city in any way and denied authority from the governing body to enter into any agreement for compensation to plaintiff; nor was any such authority shown. Plaintiff argues that the city was performing a proprietary or business function and that it would be bound as any private corporation by the acts of its chief officer within the apparent scope of his authority, and relies upon *Lehigh Valley Railroad Co.* v. *Jersey City,* 103 *N. J. L.* 574; *affirmed,* 104 *Id.* 437. That case does not support the argument made. In *Campbell* v. *Hackensack,* 115 *Id.* 209, it was held that a municipality becomes bound either by a formal, preliminary act authorizing a thing to be done or, in the absence of such preliminary act, by ratification. In this case neither of these acts appears. There was a lack of any proof of any agreement to pay compensation that would be binding on the city.

The appellant also urges that the claim in tort, upon a charge of conspiracy to defraud him of his commissions,

should have gone to the jury. The case of *Louis Kamm, Inc., v. Flink,* 113 *N. J. L.* 582, is relied upon, but does not serve appellant. There the defendant was president of a building and loan association for which plaintiff was endeavoring to sell a property. Plaintiff disclosed the name of a prospective purchaser in confidence to the defendant, who disclosed it to his brother-in-law who took up the matter and consummated the sale with plaintiff's customer as purchaser. That suit was not against the building and loan association, the principal in the contract, but against its president individually for his inter-meddling conduct. The suit here is against those with whom plaintiff asserts he had contractual relations. If he failed to prove a contract, he had no standing, and, if he proved a contract, his recovery would be for breach of contract. If a stranger intermeddled and defeated his right under the contract, a tort might be committed.. The conduct established by the proof did not amount to unjustifiable interference with his business, even if it be conceded there was an attempt to consummate the deal in such manner as to avoid payment of commissions. If he was in position to claim commissions, nothing the parties did could defeat such claim; if he did not have such standing, they were not precluded from proceeding with negotiations as they desired.

The plaintiff sought to interject himself into the transaction, with a view to securing commissions, but by his failure to secure a contract or relationship with either party that recognized him as broker in the transaction, he did not acquire the standing necessary to a recovery against any of the parties.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 15.

*For reversal*—None.