21 N.J. Super. 591 (1952)
91 A.2d 503
JOSEPH G. McCUE, TRADING AS JOSEPH G. McCUE AGENCY, PLAINTIFF-APPELLANT,
v.
PETER C. DEPPERT AND MARIE L. DEPPERT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided October 14, 1952.
*593 Before Judges JAYNE, PROCTOR and SCHETTINO.
Mr. Milton M. Abramoff argued the cause for the plaintiff-appellant (Messrs. Abramoff & Price, attorneys).
Mr. Abraham Frankel argued the cause for the defendants-respondents (Messrs. Frankel and Frankel, attorneys).
The opinion of the court was delivered by PROCTOR, J.S.C.
Plaintiff appeals from a judgment entered in favor of defendant Peter C. Deppert upon a determination by the trial court at the close of the entire case that *594 plaintiff had failed to prove facts sufficient to constitute a cause of action. Rule 3:50. A judgment of dismissal in favor of Marie L. Deppert granted at the end of plaintiff's case has not been appealed.
The evidence offered by the plaintiff may be summarized as follows: On March 25, 1949, Leon Kramer listed his farm property for sale with the plaintiff, a real estate broker. The asking price was $35,000 and the commission was to be 5%. The listing was oral. The property was also listed by Kramer with other brokers and plaintiff and another broker placed their signs on the property offering it for sale. Plaintiff showed the property to a number of prospective purchasers but, when no sale was effected, the owner reduced the asking price to $30,000 in September, 1949. Thereafter, plaintiff continued his efforts to interest buyers in the property. In January 1950 defendant Peter C. Deppert, who lived in Hasbrouck Heights, visited plaintiff's office in Red Bank and conferred with plaintiff's salesman, Lang, concerning the purchase of a ranch type house "with a little acreage." He was taken in Lang's car on a two-hour trip during which they visited several properties, including the Kramer farm in Colt's Neck. Lang showed Deppert through the Kramer house, which was unoccupied at the time, and informed him that the asking price was $30,000. Deppert said that he liked the house and he thought his wife would like it, but he did not wish to acquire all the acreage and outbuildings. This being the only house in which Deppert expressed any interest, Lang suggested that they then confer with the plaintiff who might be able to make an arrangement with the owner to sell the property with less acreage. Deppert replied he was not in a position to do anything that day but, on parting, told Lang "he would definitely be down within five or six weeks time with his wife" to see the house, and "if they were interested we would go down at that time to Mr. McCue's office and work out any particulars." Deppert never again communicated with plaintiff's office, but in April 1950 went to the Kramer property, made inquiries in the neighborhood *595 and learned that the owner lived in Lakewood. Thereupon, although McCue's office in Red Bank was only 3 miles away, he proceeded to Lakewood, a distance of over 15 miles, where he met Kramer and discussed the purchase of the property. At this meeting Kramer inquired of Deppert whether he was sent by a broker and Deppert replied in the negative. During the course of the conversation, Kramer offered to show the property to Deppert. Deppert replied that he had already seen it; that as the gate was open, he drove in and, finding a door unlocked, he went through the house. Kramer then suggested that Deppert arrange to have his wife see the property, but Deppert answered that she had already seen it.
The sale was later consummated between Kramer and Deppert for $25,000. Kramer testified that he sold for this amount because "there was no broker charge for this." When drawing up the contract of sale on May 8, 1950, at the office of his attorney, in reply to a question from Kramer's attorney, Deppert stated that no broker was involved, and a clause, "The purchaser warrants that there is no broker involved," was inserted in the contract. At this time the listing of the property with the plaintiff was still in effect.
The trial court's basis for removing the case from the consideration of the jury was that the plaintiff, not having acquired a right to receive a commission from the seller, could have no claim against the buyer.
The case is predicated upon an unlawful interference with plaintiff's business resulting in a deprivation of prospective or potential economic advantage. The right to pursue the real estate brokerage business is a property right that the law protects against unlawful interference. Louis Kamm, Inc., v. Flink, 113 N.J.L. 582, 99 A.L.R. 1 (E. & A. 1934). In the case cited it was said at page 586:
"Any act or omission which unjustifiably disturbs or impedes the enjoyment of such right constitutes its wrongful invasion, and is properly treated as tortious. The apposite principle was stated in Hollenbeck v. Ristine, 105 Iowa 488, 75 N.W. 355, 356: `If one *596 intentionally cause temporal loss or damage to another without justifiable cause and with malicious purpose to inflict it, that other may recover, in an action of tort, the damage he has sustained as a natural and proximate result of the wrong.' And in Walker v. Cronin, 107 Mass. 555, it is said: `The general principle is that, in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages. The intentional causing of such loss to another without justifiable cause, and with malicious purpose to inflict it, is of itself a wrong. * * * Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. * * *' Mr. Cooley states the general rule as follows: `An injury to a person's business by procuring others not to deal with him, or by getting away his customer, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong.' 2 Cooley, Torts, § 230."
"Malice in the legal sense is the intentional doing of a wrongful act without justification or excuse." Louis Schlesinger Co. v. Rice, 4 N.J. 169, 181 (1950). A misrepresentation made by the defendant for the purpose of securing a benefit with knowledge that it will be detrimental to the plaintiff is an unjustifiable and malicious act.
The circumstance that Kramer's agreement to pay a commission was oral and did not satisfy the statute of frauds does not remove the present action in tort against Deppert from the application of the above principles. The statute of frauds was enacted for the protection of the party sought to be charged. It is personal and not available to strangers to the agreement. Weinstein v. Clementsen, 20 N.J. Super. 367 (App. Div. 1952). Nor is it essential that plaintiff prove that he actually earned his commission under the brokerage agreement. While it is true the procurement of a ready, willing and able purchaser is a condition precedent to the duty of an owner to pay a real estate broker's commission, if the conduct of the defendant prevented that condition from happening, he cannot rely on his own wrongful acts as a shield from liability. It is sufficient that plaintiff prove facts which, in themselves or by the inferences which may be legitimately drawn therefrom, would support a finding that, except for the tortious interference by the defendant *597 with the plaintiff's business relationship with the owner, plaintiff would have consummated the sale and made a profit. The action lies not only for interference with the fulfillment of an executed contract but also for malicious interference with the right to conduct negotiations which might culminate in such a contract. In Mayflower Industries v. Thor Corp., 15 N.J. Super. 337 (Ch. Div. 1951), affirmed on opinion below, 9 N.J. 605 (1952), Judge Francis said at page 339:
"It is no answer to say that the contractual relations were not complete because Thor had not gone through the formality of signing the agreement. This status should not stand in the way of the existence of the right of action. Treating the case (on the facts here) in terms of unlawful interference with prospective economic advantage, the cause of action exists. Prosser puts the principle this way: `By analogy to interference with existing contractual relations, tort liability has been imposed for interference with prospective advantage.' Prosser on Torts, p. 1013. Citing Brennan v. United Hatters of North America, 73 N.J.L. 729 (E. & A. 1906), wherein Justice Pitney declared: `In a civilized community, which recognizes the right of private property among its institutions, the notion is intolerable that a man should be protected by the law in the enjoyment of property, once it is acquired, but left unprotected by the law in his efforts to acquire it. * * *,' Prosser goes on to say: `and that since a large part of what is most valuable in modern life depends upon the "probable expectancies," as social and industrial life becomes more complex the courts must do more to discover, define and protect them from undue interference.' (Pp. 1014-1015; also Jersey city Printing Co. v. Cassidy, 63 N.J. Eq. 759, at page 765 (Ch. 1902))."
See also Skene v. Carayanis, 103 Conn. 708, 131 A. 497 (Sup. Ct. 1926); Johnson v. Gustafson, 201 Minn. 629, 277 N.W. 252 (Sup. Ct. 1938); Note, 9 A.L.R.2d 228; Restatement, Torts, § 766 (b); 26 St. John's L. Rev. 318. But see Ringler v. Ruby, 117 Or. 455, 244 P. 509, 46 A.L.R. 245 (Sup. Ct. 1926).
From the proofs it was open to the jury to find that the defendant Deppert became interested in the property through plaintiff's efforts, determined to buy it, and, but for Deppert's representation to the owner that no broker was involved, it was reasonably probable that plaintiff would have consummated the sale; it was also open to the jury to find *598 that this representation was untrue and made with the intention of eliminating plaintiff from the transaction to the defendant's financial gain. Such a finding would constitute an unjustifiable interference with plaintiff's prospective economic advantage.
The defendant sharply disputed some of plaintiff's evidence. However, on defendant's motion for judgment, the court cannot weigh the evidence but must view it in a light most favorable to the plaintiff. Rapp v. Public Service Coordinated Transport, 9 N.J. 11, 17 (1952). We are satisfied that the case should have been submitted to the jury.
The cases of Weinstein v. Clementsen, supra; George F. Hewson Co. v. Hopper, 130 N.J.L. 525 (E. & A. 1943); Flaster v. Lincoln Tidewater Terminals, 124 N.J.L. 69 (E. & A. 1940), relied on by defendant, do not apply. In the Weinstein and Hewson cases there was an absence of any misrepresentation and the acts complained of were held to be acts of legitimate competition between brokers. In the Flaster case the plaintiff failed to establish any business relationship with the owner. Compare Goldman v. Feinberg, 130 Conn. 671, 37 A.2d 355 (Sup. Ct. 1944).
Reversed and remanded. Costs to abide the event.