72 N.J. Super. 160 (1962)
178 A.2d 19
BRENNER AND COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
HERMAN PERL AND RUTH PERL, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1961.
Decided February 2, 1962.
*162 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Walter R. Cohn argued the cause for appellant.
Mr. Murry D. Brochin argued the cause for respondents (Messrs. Lowenstein and Spicer, attorneys; Mr. Donald G. Marshall, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff Brenner and Company (Brenner), a real estate broker, instituted this action to recover a $2,700 commission allegedly due by written agreement on account of the sale of defendants' home, and alternatively to recover damages for wrongful interference with its business opportunity. Summary judgment was granted for defendants on both counts on the basis of affidavits and depositions. R.R. 4:58.
Defendants Herman Perl and Ruth, his wife, owned a home at 148 Lenox Terrace, Maplewood, N.J. On December 2, 1959 they signed a multiple listing agreement of six months duration with plaintiff as listing broker. The agreement was in a printed form and authorized the sale of the residence premises for the sum of $53,000. It gave to all the brokers of the Board of Realtors of the Oranges and Maplewood "the exclusive right to sell * * * the property * * * at the price and on terms as therein stated * * *." The Perls agreed "to pay to the listing broker, or to the active broker member of said Board making the sale * * * a commission on said price * * *, or on any other price * * * accepted * * * if the *163 property is sold * * * by an active broker member of said Board, by me the owner, or through any other source before this agreement expires." The commission rate was set at 6%. The contract also provided that "no terms or conditions exist other than those contained herein."
On February 2, 1960 Helen Phillipson, a saleswoman for Brenner, accompanied Mrs. Myron Denholtz to the Lenox Terrace property. According to Mrs. Phillipson's deposition, the two women "spent quite a while there" and Mrs. Denholtz "was very interested in the house." The following day Mrs. Denholtz, her husband Dr. Denholtz, and Dr. Denholtz's mother all inspected the property. Mrs. Phillipson stated, "they both loved the house and so did Mrs. Denholtz's mother-in-law." The Denholtzs, however, did not make an offer at that time because they thought the house was overpriced. Thereafter, Mrs. Phillipson took Mrs. Denholtz to other homes. On every such occasion the Perl property was discussed, but Mrs. Phillipson did not again take the Denholtzs to the Perl home. Mrs. Phillipson stated that the Denholtzs "knew the Perls quite well, personally, socially knew a lot about them and they said that he would never get that price and they'd have to take a lot less for it."
On February 24 the Perls executed a price change form authorizing the members of the Board of Realtors to reduce the asking price on the Lenox Terrace property to $49,500. Mrs. Phillipson told Mrs. Denholtz of this change on March 31.
Milton Lowe, Brenner's sales manager, stated in his deposition that in April he presented an offer of $46,000 to Mr. Perl on behalf of Dr. Milton Block. Mr. Perl agreed to accept that offer only if Brenner would reduce its commission from $2,760 to $2,000. Brenner refused since the reduction of commission would have been contrary to the rules and regulations of the Board of Realtors. Mrs. Dorothy Baumgarten, another Brenner sales agent, corroborated this bid and pointed out that Dr. Block at one point *164 had offered only $45,000. It was agreed by all the parties that a considerable number of people inspected the Perl property during its listing of six months.
Mrs. Perl testified that after the Block negotiation Dr. Denholtz stopped at defendants' home, stated that he happened to be in the neighborhood, and inquired as to whether the house was still for sale and if so at what price. Mrs. Perl told him that the house was still for sale but did not recall if the price was $53,000 or $49,500. He made no offer, nor was there any further discussion of price.
Lowe stated that on June 3, the day after the expiration of the multiple listing agreement, Mr. Perl telephoned him to inquire whether he would be obliged to pay a commission if he sold the property to someone who had been shown the house during the period of the listing. He replied that he believed the Perls would be liable. Perl informed him that he was going to place an advertisement in the newspaper and try to sell the house himself. Later that day, Perl telegraphed Brenner confirming that he had removed his home from listing, that it would no longer be available for sale through brokers and that he was going to attempt to sell the house himself. On June 7 Lowe dispatched a letter to the Perls advising them of the names of certain persons (including the Denholtzs and Dr. Block) to whom Brenner personnel had shown the property and informing them that Brenner expected to receive a 6% commission in the event any sale was made to them.
Defendant Herman Perl, a licensed real estate broker himself, although not a member of the Board of Realtors of any community, acknowledged rejecting Dr. Block's $46,000 offer. He stated that he advertised the Lenox Terrace property for sale in a Sunday newspaper of June 5, 1960. On the same day, Dr. and Mrs. Denholtz appeared at Perls' front door with a newspaper in hand and said they saw that the house was for sale. They told Perl that a Brenner salesman had shown them through the house some months earlier but that they had not made any offer because the *165 price seemed too high. Perl let them inspect the house. After approximately one hour Dr. Denholtz offered $45,000 for the property, tendered a check for $500 or $1,000 as a deposit, and said he would await Perl's reply. Three or four days later Perl accepted the offer.
Both Perls admitted they had met Dr. and Mrs. Denholtz at the confirmation of a mutual friend some time after their February inspection but before the expiration of the multiple listing. The Perls claimed, however, that when the Denholtzs appeared at their home on June 5 they were not consciously aware that the Denholtzs were among those who had previously inspected the property.
We agree with the trial judge's denial of the claim for a commission. A realty broker only earns his commission when, pursuant to a written agreement, he produces a buyer, able and willing to purchase on terms satisfactory to the owner. Hedden v. Folio, 62 N.J. Super. 470, 474 (App. Div. 1960); Mack v. Revicki, 47 N.J. Super. 185, 192 (App. Div. 1957); Restatement, Agency, § 446, p. 351 (2d ed. 1958). The agreement under consideration is clear and unambiguous. It provided that a commission would be earned only if a sale was arranged before the expiration of the agency contract. When the agent's employment terminated, the parties stood as if the contract had never been made. The market for the sale of the owner's property is not circumscribed by the fact that an available purchaser had previously been approached by the broker. Loxley v. Studebaker, 75 N.J.L. 599, 606 (E. & A. 1907).
Brenner could have conditioned his right to commission by foresight in the use of appropriate language in the agreement. Hedden v. Folio, supra (62 N.J. Super., at p. 474). Cf. Breen v. Levine, 32 N.J. Super. 525 (App. Div. 1954); Schwartz v. Weinstein, 104 N.J.L. 368 (E. & A. 1928); Annotation, "Broker's right to commission on sales consummated after termination of employment," 27 A.L.R.2d 1348 (1953). However, it is not for us to alter the contract for the benefit or detriment of either party, *166 but to give effect to their declared intention. Mack v. Revicki, supra (47 N.J. Super., at p. 193). Therefore, since there was no genuine issue as to any material fact on this point, the granting of summary judgment was proper. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954); R.R. 4:58-3.
We have reached a different conclusion as regards the second count of the complaint. It is settled that the right to pursue the real estate brokerage business is a property right that the law protects against unjustifiable interference. Louis Schlesinger Co. v. Rice, 4 N.J. 169, 180 (1950); Sustick v. Slatina, 48 N.J. Super. 134 (App. Div. 1957); McCue v. Deppert, 21 N.J. Super. 591, 595 (App. Div. 1952); Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 586 (E. & A. 1934); 1 Harper & James, Torts (1956), § 6.6, pp. 492-3. In the Sustick case (48 N.J. Super., at p. 143) we said:
"Every business entrepreneur has a right to enjoy the fruits and advantages of his own industry, skill and credit, free from unjustified interference, but not as against fair and legitimate competition. The intentional interference with the opportunity of a broker to earn a commission is actionable in tort unless the defendants are acting in the exercise of an equal or superior right."
On the defendants' motion for summary judgment the burden rested on the Perls to exclude any reasonable doubt as to the existence of a genuine issue of material fact. United Advertising Corp. v. Metuchen, 35 N.J. 193, 196 (1961). The papers submitted on behalf of the Perls must be closely scrutinized, while those of Brenner are to be indulgently treated. Sokolay v. Edlin, 65 N.J. Super. 112, 120 (App. Div. 1961). So viewed, the evidence is susceptible of raising the unmistakable inference that the defendants knew the Denholtzs and had somehow communicated with and advised them to withhold their $45,000 offer for the property until after the multiple listing expired. Both Perls admitted having been acquainted with the Denholtzs. The testimony disclosed that the Perls had ample opportunity *167 to make a private arrangement along the lines indicated. It is clear that the defendants were in a position to save over $2,000 if they were so motivated and acted accordingly. Whether they actually were is a disputed question of fact to be resolved at a conventional trial, as is the question whether they have arrived at the aforementioned understanding with the Denholtzs.
The case of Louis Schlesinger Co. v. Rice, supra, is instructive in relation to the problem here presented. While it is frequently cited for the tort theory of liability in favor of brokers suing purchasers, it also involves an action against the owner. The plaintiff broker had an exclusive agency to lease property. During the agency term the owner engaged a second broker to find a tenant, offering terms more favorable than those submitted to the plaintiff, and ultimately leased the property to a tenant procured by the second broker. The court described the owner's conduct as a breach of contract. It stated that while the proofs did not justify a finding that the plaintiff had procured the tenant so as to be entitled to a commission, nevertheless, at trial (the case was decided on a motion for summary judgment) it might well be established that plaintiff would have negotiated a lease to the same tenant but for the owner's wrongful conduct.
It is our view that in principle the decision in the Schlesinger case is applicable here notwithstanding that the court analyzed the problem in terms of breach of contract while here plaintiff pursues defendant on the alternative theory of tort. If defendants approached the Denholtzs subsequent to the time when the plaintiff had shown them the property and arrived at the understanding with the Denholtzs mentioned above for the purpose indicated, that conduct was wrongful and actionable, whether we conceive the theory of recovery to be for breach of contract or in tort.
The factual issues here involved cannot be resolved on the basis of affidavits and depositions where inferences for and against the truth of facts grounding the existence *168 of a cause of action arise therefrom, no matter how strongly they point in one direction or the other. West Side Trust Co. v. Gascoigne, 39 N.J. Super. 467, 470-471 (App. Div. 1956). Since the inference was raised that Brenner was unjustifiably deprived of its commission as a result of Perls' activities, even in the face of evidence that might have strongly pointed the other way, there should have been no summary determination of the second count of the complaint. Welsh v. Griffith-Prideaux, Inc., 60 N.J. Super. 199, 207 (App. Div. 1960).
Judgment affirmed in part and reversed in part.