167 N.J. Super. 486 (1979)
401 A.2d 265
HARRY W. FRY, T/A H.W. FRY REALTY COMPANY, PLAINTIFF-APPELLANT,
v.
WILLIAM J. DOYLE, INDIVIDUALLY, AND T/A WILLIAM J. DOYLE ENTERPRISES AND ELIZABETH F. JUNG, INDIVIDUALLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1978.
Decided April 19, 1979.
*488 Before Judges ALLCORN, SEIDMAN and BOTTER.
Mr. John L. Miller argued the cause for appellant (Messrs. Miller, Myers, Matteo & Rabil, attorneys).
Mr. Jan Schlesinger argued the cause for respondent William J. Doyle (Messrs. Hartman, Schlesinger, Schlosser & Faxon, attorneys; Mr. Kenneth S. Domzalski on the brief).
Mr. John P. Yetman, Jr., argued the cause for respondent Elizabeth F. Jung (Mr. James Logan, Jr., attorney).
The opinion of the court was delivered by SEIDMAN, J.A.D.
Plaintiff, a real estate broker, brought suit for commissions against defendants, respectively the purchaser and seller of a 64-acre tract of land situated in Westhampton Township, Burlington County. Following a nonjury trial, the trial judge issued a written opinion, reported at 151 N.J. Super. 115 (Law Div. 1977), in which he rejected the claim. This appeal was taken from the resultant judgment. For reasons that follow, we reverse.
The following facts, as related by the trial judge, are not in substantial dispute:
On June 1, 1971, as the result of plaintiff's services, defendant Jung and C.W. March Realty Co., Inc. (hereinafter referred to as March), as buyer, entered into an option by which March secured the right to buy Jung's 64 acres of land on or before September 1, *489 1971, and for three successive one-year periods thereafter. March extended the option for each such period to its final expiration date of September 1, 1974. If and when exercised the option became a binding agreement of sale for the land at increasing prices per acre ($8000 an acre from September 1, 1973 to September 1, 1974) and required March to pay 29% down in cash at settlement 60 days after exercise of the option and give Jung a note and mortgage for the balance payable in two equal annual installments at 7% interest.
* * * In an entirely unrelated transaction in 1973 defendant Doyle lent March $100,000 secured by an assignment of March's interest in the option on Jung's land. March defaulted on the loan and on June 18, 1974, 2 1/2 months prior to expiration of the option, Doyle took over March's position as optionee. [151 N.J. Super. at 119-120]
Appended to the option agreement was a "Commission Addendum" signed by Mrs. Jung, in which she undertook to pay to plaintiff "a commission of TEN PERCENT (10) of the gross sales price * * * for the sale of the property" described in the agreement. The commission was to be computed only "on the purchase price as received by Seller from Buyer or any part thereof," and not on the option money.
In July 1974 Mrs. Jung went to see Doyle after March told her he would be unable to exercise the option. Doyle offered her several alternate proposals for either purchasing the property or renewing the option. Mrs. Jung did not agree to any of them at the time; however, in early October 1974, in the words of the trial judge, "the pressure of her own lonely circumstances and ill health finally caused her to agree." 151 N.J. Super. at 121. The trial judge noted that Doyle had not "pushed or hounded her about it." Id.
A contract of sale was entered into on October 10, 1974, incorporating one of the proposals that Doyle had offered in July. The purchase price, based on $7,250 an acre, was $469,075. The contract called for a down-payment of $50,000, with the balance to be secured by a purchase money mortgage in the sum of $419,075, with interest at the rate of 7 1/2% per annum, payable in ten equal annual installments of $59,194, inclusive of principal and interest. The deed and purchase money mortgage were executed and delivered at *490 the same time. Doyle and Mrs. Jung also signed an agreement to share equally in the costs of defending any litigation and in the payment of any judgment that might be rendered if plaintiff should sue for commissions.
As the trial judge put it succinctly:
This suit arises out of the fact that 40 days after the option expired Doyle and Jung entered into an agreement for the sale of the property on terms essentially similar to one of those Doyle proposed in July 1974 * * * and immediately made settlement. [151 N.J. Super. at 121]
Plaintiff asserted in his complaint that the agreement for the purchase and sale came about solely through his efforts in securing a prospective purchaser whose rights under the option agreement were taken over and asserted by Doyle. He contended that when Doyle and Mrs. Jung "entered into an Agreement for the Sale of the property upon terms acceptable to Defendant Jung," he became entitled to the commission. Judgment was demanded against her for $51,760 plus interest and costs of suit. The second count of the complaint spelled out a cause of action against Doyle and Mrs. Jung for their alleged tortious interference with his contractual relations so as to deprive him of his commission on the sale of the property.
The trial judge first addressed the issue of plaintiff's right to a commission as it related to the option agreement. He held that the option was not exercised in the manner prescribed therein. He reasoned that plaintiff's contract for commissions "was appended to a specific, time-limited, irrevocable offer to sell land on specific terms to a specific buyer," 151 N.J. Super. at 123, and the claim for commissions could rise no higher than the instrument to which it was appended. His conclusion was that since the addendum did not preserve the commission upon the lapse of the option, the right to it expired with the option.
We believe that the trial judge was mistaken in his concept of the applicable law. He relied heavily on Brenner and *491 Co. v. Perl, 72 N.J. Super. 160 (App. Div. 1962), but that case is inapposite. There a broker engaged under a listing agreement was held not to be entitled to a commission from the seller where the sale was consummated after the expiration of the time specified in the agreement, there being a clear and unambiguous provision in the agreement that "a commission would be earned only if a sale was arranged before the expiration of the agency contract." 72 N.J. Super. at 165. The court's position was that when the agent's employment terminated, "the parties stood as if the contract had never been made." Id.
As the court observed in Brenner and Co. v. Perl, supra, a broker's right to commission may be limited by the terms of his agreement with the owner.[1] But we know of no reported case, and none has been brought to our attention, which holds that in order for a broker's right to a commission to survive the expiration of his agency contract or the term of an option, as the case may be, the agreement must specifically so provide, even though the seller and buyer were brought together by the broker during the period of the agency contract or option, and thereafter actually consummated the transaction. The option cases in other jurisdictions cited by the trial judge as illustrative of instances where commissions were not awarded did not turn on whether the broker's agreement contained a provision for the continuance of his right to a commission beyond the term of the agreement or option. Rather, the broker was denied his commission *492 in those cases because of particular limiting provisions in the agreement. Thus, for example, in Scott v. Huntziger, 148 Colo. 225, 365 P.2d 692 (Sup. Ct. 1961), where an owner and optionee entered into a new purchase contract after the option had expired on terms different from those contained in the option, and the agreement had been to pay the broker a commission "if the deal with White results in our sale of the property as provided in the Agreement with him," the court ruled that the broker could not recover any commission.
Similarly, in Dunson v. Huntley, 135 Ga. 465, 69 S.E. 707 (Sup. Ct. 1910), where the commission was to be paid in the event the prospective purchaser bought in accordance with the terms of the option, the broker was declared not to be entitled to a commission on a sale that was made three years after the expiration of the option to the original purchaser and two other persons on entirely different terms. See also, Williams v. United California Bank, 223 Cal. App.2d 309, 35 Cal. Rptr. 788 (D. Ct. App. 1964); Saunders v. Hackley & Hume Co., 208 S.W. 67 (Mo. Sup. Ct. 1918). Cf. Breen v. Lavine, 32 N.J. Super. 525 (App. Div. 1954).
On the other hand, in Cotten v. Willingham, 232 S.W. 572 (Tex. Civ. App. 1921), a broker was held to be entitled to his commission where the prospective purchasers were willing to close the deal even after the time limit fixed by the contract had expired, despite the owner's contention that the contract to sell was only an option and the broker had therefore not procured purchasers who were ready, able and willing to bind themselves to buy the property. It does not appear from the facts in that case that the broker's right to a commission was subject to any proviso or contingency in his agreement. In Gallinger Real Estate, Inc. v. Mufale Development Corp., 53 A.D.2d 1014, 386 N.Y.S.2d 485 (App. Div. 1976), the broker procured a buyer for a number of lots, with the option to acquire other lots from the owner on specified terms and conditions. After the basic contract was consummated the seller was informed by the purchaser *493 that he could no longer exercise the option pursuant to the original terms. An oral agreement was then entered into between the parties under which option rights were given under different terms. The lots covered by the new option agreement were ultimately conveyed and the broker successfully sued for his commissions on those sales. The court held that the broker was entitled to the commission because there was a substantial basis in the record to support the conclusion that the sales were "the fruit of the original option agreement and that plaintiff's efforts were the procuring cause of those sales." 386 N.Y.S.2d at 487. Cf. Freeman v. Kinston Mfg. Co., 233 F. 58, 61 (4 Cir.1916). And to like effect see Cole v. Crump, 174 Mo. App. 215, 156 S.W. 769, 771 (Ct. App. 1913), in which the court held that the broker need not show that the sale was completed within the period of time prescribed in the contract of employment or an option on the property, provided it appeared that "the agent initiated the transaction of purchase within the prescribed time, and may therefore be regarded as the procuring cause." See also, Consolidated Realty Co. v. Graves, 291 Ky. 456, 165 S.W.2d 26, 29 (Sup. Ct. 1942).
In the instant case, the commission agreement was not so circumscribed as to be dependent upon a formal exercise of the option by the optionee, nor was it conditioned upon a sale on the terms and conditions contained in the option. The seller's agreement was simply to pay a commission of 10% of the gross sales price. In such case the well-settled principle of law to be applied is that a broker "is ordinarily entitled to his commission * * * if he causes a customer to negotiate with the principal and the customer makes a purchase without a substantial break in the ensuing negotiations." 2 Restatement, Agency 2d, § 448(d) at 357 (1958). Cf. Gallinger Real Estate, Inc. v. Mufale Development Corp., supra; Cole v. Crump, supra. Put another way, a broker must ordinarily establish
*494 * * * that he was the "efficient producing cause" in bringing about the sale  at least in the sense of causing the seller to negotiate with a customer, produced by the broker, who is ready, able and willing to perform, and where the transaction is later consummated without a substantial break in the ensuing negotiations. Loeb v. Peter J. Pasbjerg & Co., 22 N.J. 95, 100-101 (1956); First New Hampshire Corp. v. Van Syckle, 37 N.J. Super. 469, 472 (App. Div. 1955); see also, Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551 (1969). [De Benedictis v. Gerechoff, 134 N.J. Super. 238, 242 (App. Div. 1975)]
The trial judge here recognized that "plaintiff might yet recover if he were the efficient cause of the sale," 151 N.J. Super. at 126, but he resolved that issue against plaintiff. He said:
* * * True, the option date and sale were separated by only 40 days, but there had been no negotiations since July 1974 and the terms finally agreed on were entirely different from those of the option. What brought Jung and Doyle together finally was Jung's submission to her own personal problems. Plaintiff had nothing to do with those forces or the shape of the final arrangement. Indeed, conceding Doyle was produced as an indirect but proximate result of plaintiff's services, he was never able to buy in the financial sense within the period of the option.
* * * [T]he policy in New Jersey is expressed by the principle that a broker's commission is not earned until he finds a buyer, ready, willing and able to buy. Ellsworth Dobbs, Inc., supra. In this case neither March nor Doyle were such buyers within the period of the option of which plaintiff's contract was a part.
We cannot agree with the foregoing rationale. It is not controverted that March and Mrs. Jung entered into the option agreement through plaintiff's efforts. That Doyle succeeded to March's interest did not alter plaintiff's status as the procuring or efficient cause of at least the option agreement. Furthermore, the trial judge's belief that Doyle himself never considered picking up the option as written is ill-founded in light of his attorney's letter to Mrs. Jung's attorney dated June 27, 1974, which contained the assurance that "[w]e fully intend to exercise this option prior to September 1, 1974 and will keep you advised with respect to *495 further developments." A few weeks later certain alternative purchase and option renewal proposals were made to Mrs. Jung, described by the trial judge as an attempt by Doyle "to protect his own interest and reduce the cash needed for settlement  all of this within the option period and all directed at exercising [the option], not letting it expire." 151 N.J. Super at 125-126.
The trial judge deemed significant the absence of further negotiations and the fact that the terms finally agreed upon were entirely different from those in the option. But, unless his agreement provides otherwise, a broker who is duly engaged does not lose his commission, assuming the transaction is ultimately consummated, where he procures for the owner a purchaser ready, willing and able to comply on terms other than or different from those originally specified, but which are satisfactory to the owner. Beckmann v. (Zinke's) Rainbow's End, Inc., 40 N.J. Super. 193, 196 (App. Div. 1956), certif. den. 22 N.J. 219 (1956). That Doyle was "never able to buy in the financial sense within the period of the option," 151 N.J. Super. at 126, is irrelevant here, since the commission addendum did not contain any proviso that payment of the commission was contingent upon the production of a purchaser ready, willing and able to buy before the option expired. Cf. Brenner and Co. v. Perl, supra, 72 N.J. Super. at 165. There was no requirement that the sale flow from the optionee's formal acceptance of the option, and not otherwise. We also consider irrelevant the further point made by the trial judge that plaintiff had nothing to do with the "forces" which brought Mrs. Jung and Doyle together or "the shape of the final arrangement." It is not necessary that the broker take part in the ensuing negotiations or be an influential factor in persuading the purchaser to agree to the ultimate terms. First New Hampshire Corp. v. Van Syckle, 37 N.J. Super. 469, 471-472 (App. Div. 1955); 2 Restatement, Agency 2d, § 448(d) at 357 (1958).
*496 The undisputed facts of this case persuade us that the hiatus from July 1974 until Mrs. Jung accepted one of the proposals made to her by Doyle did not constitute a substantial break in the negotiations so that the broker would no longer be the efficient cause of the conveyance in October. As indicated, Mrs. Jung had agreed to pay a commission of 10% "for the sale of the property," without any other stated limitation or contingency. Neither Doyle nor Mrs. Jung indicated to the other at any time, either before or after September 1, 1974, an intent to abandon the deal. When Mrs. Jung left Doyle's office after their conference in July she did not break off negotiations completely, although the proposals were not satisfactory to her. She said at the trial that she went home and thought it over and finally, for the reasons previously indicated, decided to accept the purchase proposal. Furthermore, one can reasonably infer from the simultaneous execution of the contract, deed and mortgage that final agreement had been reached long enough before the closing date to allow for normal preparatory work.
We are convinced that on the facts here present the broker earned and was entitled to receive his commission from the seller, and that the trial judge erroneously came to the opposite conclusion. In the circumstances, we need not pursue the further issue of whether Doyle and Mrs. Jung tortiously interfered with plaintiff's contractual relations, particularly in view of the agreement between the two to share in the payment of any judgment that might be entered in plaintiff's favor.
The judgment is reversed and the matter is remanded for the computation of the commission to which plaintiff is entitled (which should be on the basis of the actual purchase price) and the entry of judgment accordingly. We do not retain jurisdiction.
NOTES
[1] It is to be noted in this regard that Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 551 (1967), rejected "the proposition that whenever the owner-seller enters into a binding sale contract with the proffered customer, the broker's right to commission is complete unless the owner has made a special agreement with the broker that such right is contingent upon the closing of title." Absent default by the owner, the contract of sale has to be performed by the buyer in order for the broker to be entitled to his commission. This rule of law is now to be read into every brokerage agreement or contract of sale. 50 N.J. at 555-556.