724 F.2d 31
 FEIST & FEIST REALTY CORP., a New Jersey corporation,
Appellant in No. 83-5259,
v.
HANSFORD PROPERTIES, INC., a corporation and McJunkin
Corporation, a corporation,
Hansford Properties, Inc., Appellant in No. 83-5125.
 Nos. 83-5125, 83-5259.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 25, 1983.
Decided Dec. 16, 1983.
 
 Deborah A. Sink (argued), J. Thomas Lane, Bowles, McDavid, Graff & Love, Charleston, W.Va., for appellant Hansford Properties, Inc.
 Robert E. Guterl (argued), Marianne A. Rotunno, Woolson, Guterl, Sutphen & Anderson, Somerville, N.J., for Feist & Feist Realty Corp.
 Before GIBBONS, GARTH and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 Hansford Properties, Inc. appeals from a summary judgment awarding a $15,661.78 brokerage commission to Feist & Feist Realty Corp. (Feist Realty). The judgment provides for interest on that amount since the date of its entry. Feist Realty cross-appeals the judgment, contending that the court should have awarded pre-judgment interest from the date the commission should have been paid. We hold that as a matter of law Feist Realty was not entitled to the commission, and reverse the summary judgment. That disposition moots the cross-appeal.
 
 I.
 
 2
 Feist & Feist, a New Jersey corporation and a licensed real estate broker, and Hansford Properties, Inc., entered into a contract on April 4, 1974, designating Feist & Feist "sole and exclusive agent to lease and sell the property located at 2 Service Boulevard, Linden, New Jersey ... at a price of $315,000, or lease at an annual rental of $2.00 per square foot net to Hansford Properties...." Hansford Properties agreed to pay Feist and Feist "a commission of five per cent (5%) of the sales price, or five per cent (5%) of the total gross aggregate rentals for the original term of the lease, and on any options, extensions or renewals thereof." The agreement provided further:
 
 
 3
 Should said premises be sold to a tenant procured by Feist & Feist, then, and in that event, Feist & Feist shall be paid a brokerage commission equal to five percent (5%) of the sales price, less such commission as may already have been paid on any unexpired term of the lease.
 
 
 4
 On July 1, 1974, Feist & Feist procured Jay Cee Laboratories, Inc. as a tenant for the Linden property for ten years at a gross rental of $218,000. The lease to Jay Cee grants the tenant an option to purchase at any time prior to July 31, 1984 at a price of $275,000 plus increases in proportion to increases in the consumer price index.
 
 
 5
 Pursuant to the terms of the agency agreement Feist & Feist was paid a commission of 5% of the gross rental of $218,000. In December of 1980, Ellis Merkl, the chairman of the Board of Jay Cee, notified Hansford that Jay Cee intended to purchase the property for $375,000. Under the lease's formula for determining the option price it would have been $459,342.62, but after discussions between Hansford and Jay Cee the price apparently was lowered. Jay Cee's offer to purchase was conditioned, however, on its obtaining financing through the New Jersey Economic Development Authority. The lease provides that if the option is exercised, the closing will occur within sixty days. Several postponements in the closing date occurred, because Jay Cee was unable to obtain financing from the New Jersey Economic Development Authority. The extended closing date was not met, and Hansford considered the option terminated.
 
 
 6
 Thereafter Mr. Merkl sought to have Hansford convey the leasehold premises to Ellis F. Merkl and Marie E. Merkl, Trustees under a 1975 trust for the benefit of their children; the Trust to pay $100,000 on closing and execute a $275,000 purchase money mortgage. In June of 1981 a conveyance from Hansford to the trustees was made on these terms. Two days prior to the closing, Carlyle W. Crane, Esq., counsel for the Merkls, informed the general counsel for Hansford that there was "a possible real estate commission due upon the closing." (Affidavit of J. Thomas Lane, p 10). This possibility was raised, apparently, because Feist & Feist had been notified of Jay Cee's earlier intention to exercise the option. The closing statement, which had already been prepared, was amended to include the language:
 
 
 7
 Commission payable to Feist & Feist by Seller, to be paid by Seller outside the closing.
 
 
 8
 On June 16, Feist & Feist learned that a closing had taken place, and sent a letter to Hansford claiming an additional commission in the amount of $15,661.78.[1] In July of 1981 Feist Realty succeeded to the business of Feist & Feist, and became the assignee of the claim. Hansford refused to pay the claim, and in April 1982 Feist Realty commenced suit in the Superior Court of New Jersey.
 
 
 9
 The suit was removed to the district court because of diversity of citizenship. Both parties moved for summary judgment. The affidavits in support of those motions establish the foregoing facts and are not in dispute. So far as appears in the moving papers Jay Cee is still in possession as tenant under the July 1, 1974 lease.
 
 
 10
 The district court, focusing on the language in the agency contract quoted above, concluded that Feist & Feist, and thus its assignee, Feist Realty, was entitled to a commission on the sale to the Merkl trust. New Jersey law governs. The Statute of Frauds of that state provides, in relevant part, that "no broker or real estate agent selling or exchanging real estate for or on account of the owner shall be entitled to any commission for such sale or exchange, unless his authority therefor is in writing, signed by the owner or his authorized agent ...." N.J.Stat.Ann. Sec. 25:1-9 (West 1940). Since the only writing granting Feist & Feist authority to act as an agent for Hansford is that of April 4, 1974, Feist Realty's claim depends upon it. The issue, therefore, is whether, as a matter of New Jersey law, the sale to the Merkl trust falls within the terms of the April 4, 1974 contract; i.e., whether the sale to the Merkl trust is a sale to "a tenant procured by Feist & Feist."
 
 
 11
 No fraud or conspiracy is alleged in the complaint, nor does anything in the record suggest that Hansford arranged for the sale to the Merkl Trust in an effort to defraud Feist Realty. It is undisputed that Jay Cee was unable to finance the purchase after exercising the modified option to purchase the property for $375,000 in cash, and that the moving spirit in the sale to the Trust for $100,000 in cash and a purchase money mortgage was Merkl.
 
 
 12
 Consistent with the policy of the statute of frauds, contracts for brokerage commissions on the sale of New Jersey real estate have been strictly construed. Illustrative of that construction are two cases involving Feist & Feist. Feist & Feist v. Bloomfield Bank & Trust Co., 120 N.J.L. 221, 198 A. 827 (1938); Feist & Feist v. Bloomfield Bank & Trust Co., 126 N.J.L. 455, 19 A.2d 688 (1941). Those cases establish that when a brokerage contract authorizes a commission on sale to a named corporation the broker is not entitled, absent proof of fraud or conspiracy, to a commission on a sale to an individual who is an officer of that corporation.
 
 
 13
 A brokerage contract can, of course, be so drawn as to give the broker broader authority than that in the contracts involved in the Bloomfield Bank cases. In Ackerman v. Citron, 55 N.J.Super. 122, 150 A.2d 50 (Super.Ct.1959), for example, the agreement covered a sale to a tenant or "anyone acting on its behalf." The court held that
 
 
 14
 the intent of the parties in the light of their written expression was if an officer or stockholder of the lessee purchased the property primarily motivated by considerations of service to the business needs of the corporate lessee, rather than as a personal investment, the purchase should be regarded as having been affected on behalf of the lessee within the meaning of the agreement.
 
 
 15
 Id. at 130, 150 A.2d at 55. The Ackerman case also rejected, however, the contention that the difference between a corporation and an individual investor could, absent fraud or manipulation, be disregarded by the courts in the brokerage context. Id. at 128, 150 A.2d at 53-54.
 
 
 16
 This record does not present the issue posed in the Ackerman case. First, the language of the agreement is clear. It refers to a sale to "a tenant procured by Feist & Feist," not to a sale to someone acting on that tenant's behalf. Second, even aside from the language of the agreement, Feist Realty has not shown that the purchase was made on behalf of any entity but the Merkl Trust, which came into existence years before the transaction in issue. In its affidavits supporting its motion for summary judgment, Feist did not establish that Merkl was acting for or on behalf of or as an alter ego of Jay Cee, the tenant. Indeed, Merkl's status was never put in issue by the parties. Because it was Feist's burden to show that Merkl purchased the property on behalf of Jay Cee rather than for the Merkl Trust, and Feist failed to carry that burden, Feist cannot prevail.
 
 
 17
 Fry v. Doyle, 167 N.J.Super. 486, 401 A.2d 265 (Super.Ct.1979), on which Feist Realty relies, is not inconsistent with Bloomfield Bank. That case involved an agreement providing for payment of "a commission of TEN PERCENT (10%) of the gross sales price ... for any sale of the [described] property." Id. at 489, 401 A.2d at 267. The Court quite naturally held:
 
 
 18
 The seller's agreement was simply to pay a commission of 10% of the gross sales price. In such case the well-settled principle of law to be applied is that a broker "is ordinarily entitled to his commission ... if he causes a customer to negotiate with the principal and the customer makes a purchase without a substantial break in the negotiations." 2 Restatement, Agency 2d, Sec. 448(d) at 357 (1958).
 
 
 19
 Id. at 493, 401 A.2d at 269. The outcome in Fry v. Doyle turned upon the fact that the ultimate purchaser, who purchased under an option, was procured as a result of the broker's efforts, and the agreement for a commission was broad enough to satisfy the statute of frauds. Here the agreement is specific, and the purchaser does not fall within it.
 
 
 20
 The judgment appealed from will be reversed and the case remanded for the entry of judgment in favor of Hansford. The cross-appeal will be dismissed as moot.
 
 
 
 [1]
 The sum represented five percent of the sales price of the property ($18,750) less the sum of the unused lease commission ($3,088.22)