88 N.J. Super. 113 (1965)
210 A.2d 808
WILLIAM J. SCHWENN, PLAINTIFF,
v.
S. GOLDBERG & CO., INC., A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 28, 1965.
*114 Mr. Ralph W. Chandless for plaintiff (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Jacob Schneider for defendant (Mr. E. Dennis Brod, on the brief).
*115 BOTTER, J.S.C.
This is the determination of motions for summary judgment brought by both parties, plaintiff and defendant. Plaintiff is a real estate broker who claims a commission for bringing about the acquisition of defendant's property by the County of Bergen. Defendant had agreed to pay plaintiff a commission of 10% of the proposed selling price, $285,000. The county did not agree to the terms of sale offered by defendant, and a contract for the sale of the property was never consummated. However, the county proceeded to take the property through condemnation proceedings and ultimately paid defendant $314,500 for the property. Plaintiff contends that the circumstances of the acquisition entitle him to a commission. Defendant denies liability as a matter of law. The facts in the case are found in the affidavits and depositions in this cause as well as in the record of the condemnation proceedings. Appeals in the condemnation proceedings are reported in County of Bergen v. S. Goldberg & Co., Inc., 76 N.J. Super. 524 (App. Div. 1962), reversed 39 N.J. 377 (1963), and County of Bergen v. City of Hackensack, 84 N.J. Super. 252 (App. Div. 1964).
In October 1960 the City of Hackensack (Hackensack) sold at public auction a tract of vacant land consisting of approximately 11 or 12 acres. S. Goldberg & Co., Inc. (Goldberg) was the successful bidder. Goldberg's bid of $226,000 was accepted by the City Council of Hackensack on October 18, 1960, subject to various conditions of sale. Certain of these conditions were included in the deed of conveyance to Goldberg dated November 3, 1960, namely (a) that within two years from the date of the deed a building would be constructed on the premises at a cost of at least $300,000, and (b) if such construction was not completed before November 1, 1962, the City of Hackensack had the right to receive from the owner of the premises as liquidated damages a sum of money equal to the taxes that would have been levied against a structure having a market value of $300,000. The deed described these conditions as "covenants and conditions `which shall run with the land and be binding upon the party of the *116 second part, its successors and assigns.'" See County of Bergen v. City of Hackensack, supra, 84 N.J. Super., at pp. 254, 255.
Around this time the board of freeholders was interested in finding a site for a county jail annex. A committee had been formed to recommend a suitable site. Plaintiff, a licensed real estate broker, learned of this activity and brought defendant's property to the attention of William R. Smith, the executive administrator for the board of freeholders. Smith called the site to the attention of the committee and it was found acceptable. Smith then authorized plaintiff to negotiate with the owner for the purchase of the property.
Sometime in April 1961 plaintiff communicated with Sidney N. Goldberg, president of defendant, concerning the sale of the property. By letter of April 28, 1961, signed by Mr. Goldberg and addressed to plaintiff, defendant offered to sell the property to the County of Bergen for $285,000 "Net Cash." The letter called for a deposit of $28,500, execution of a contract of sale duly authorized by the county on or before May 10, 1961, title closing to be on or before July 10, 1961, and title to be "in accordance with deed dated November 3, 1960, copy of which is attached hereto and made a part hereof."
Thereafter, on May 9, 1961, defendant gave plaintiff a second letter, offering the property at $285,000 "with a commission at the rate of 10% of that amount to be paid to you at time of closing." Other terms contained in the earlier letter were repeated, except that the dates for execution of a contract for sale and title closing were changed. This letter also recited that title was to be in accordance with the deed of November 3, 1960 by which defendant acquired the property from the City of Hackensack. A third letter, dated May 16, 1961 and addressed to the board of freeholders, confirmed the same terms of the offer, except that the dates for contract and title closing were changed again, this time to June 15, 1961 and August 16, 1961, respectively. This letter recited that the deed offered was a "Bargain and Sale deed."
*117 In May 1961 county counsel prepared a proposed contract for the sale of the property which differed in several respects from the terms of defendant's offer. It called for conveyance by warranty deed; it made the transaction subject to the completion of proceedings to appropriate money to finance the purchase of the property; and it called for no deposit on signing of the contract. Most importantly, it rejected defendant's offer to convey such title as defendant had obtained from the City of Hackensack, but instead provided that:
"The Seller, on or before July 1, 1961, shall secure an appropriate instrument from the City of Hackensack, releasing and discharging the covenants and conditions set forth in the Deed to the Seller, dated November 3, 1960, recorded in Book 4183, at page 123 et seq., imposing upon the Seller herein, its successors and assigns, the obligation to construct a building on the premises in question, the aggregate cost of which shall not be less than $300,000.00 and providing for payments in lieu of taxes in the event that such building is not so erected, so that the premises shall be conveyed to the County of Bergen, free and clear of all of such covenants and conditions."
The proposed contract was never signed. The intransigent obstacle to the transaction was the construction provision in the deed from the City of Hackensack. Neither the county nor Goldberg would assume the risk of Hackensack's rights arising out of the construction covenant. Goldberg's offer to sell the property was made subject to those rights, if any; and the county would not take title unless it obtained the release of any interest the City of Hackensack might have. Plaintiff sought to obtain Hackensack's release of its rights but was unsuccessful. On December 20, 1961 the county instituted condemnation proceedings against defendant and the City of Hackensack. The complaint recited that the county was unable to acquire the property by agreement with the owner and that the persons appearing to have an interest in the property were defendant as owner and the City of Hackensack by virtue of the covenant requiring construction on the property.
The City of Hackensack filed an answer opposing the county's right of condemnation. The Law Division entered *118 an order of condemnation on February 2, 1962 and appointed three condemnation commissioners. Hackensack appealed the order, contending it was not afforded an adequate opportunity by the trial court to defend against the county's arbitrary and unjustified acquisition. The Appellate Division on October 25, 1962 affirmed the trial court's action (76 N.J. Super. 524), but on March 4, 1963 the Supreme Court reversed (39 N.J. 377) and remanded for a prompt trial. The order of February 2, 1962 allowing the condemnation and appointing condemnation commissioners was set aside.
Pending this appeal, however, the condemnation proceeding went forward based upon the February 2, 1962 order of the Law Division. The condemnation commissioners scheduled a hearing in May 1962. The county and Goldberg then agreed to a stipulation of settlement by which the value of the property was fixed at $285,000, to be paid on or before June 30, 1962. By this stipulation Goldberg also agreed to pay any award which might be determined in the proceedings to be due to the City of Hackensack by virtue of the deed covenants. This settlement was never consummated, however. By virtue of the appeal the City of Hackensack was permitted to litigate the county's right to condemn the property. Although this right was upheld by the Law Division on March 19, 1963, it was not until June 24, 1963 that the Law Division entered a new order of condemnation, appointing the same three condemnation commissioners to fix the value of the property. Hearings were held on July 30, 1963 and August 13, 1963. All parties participated and offered testimony as to the value of the property. Later in August 1963 the condemnation commissioners filed their report fixing the value of the property at $288,500. The county was then allowed to pay this award into court because of Hackensack's claim to a part of the award.
On August 30, 1963 Goldberg appealed from the award made by the commissioners and demanded trial by a struck jury. The county and Goldberg then agreed to stipulate to a value of $314,500 for the property. With their consent, and *119 without objection by the City of Hackensack, an order was entered by the Law Division on October 25, 1963 increasing the commissioners' award to $314,500, allowing the additional $26,000 to be paid to the Clerk of the Superior Court, and the appeal from the condemnation commissioners' award was dismissed with prejudice.
The next significant step in the saga was a petition by Goldberg for an adjudication of Hackensack's claim to a part of the award. The court ordered Hackensack to file a petition setting forth the amount and basis of its claim. Hackensack did so, claiming that its interest in the fund was $58,837.35. Hackensack contended it was entitled to an equitable rescission of its sale to Goldberg due to the impossibility of performance of the deed conditions. Hackensack contended that Goldberg should get back the original purchase price, plus taxes paid and interest on money invested, and the balance of the condemnation award should be paid to Hackensack. The trial court rejected Hackensack's claim and on December 3, 1963 ordered that the entire condemnation award be paid to Goldberg. This order was affirmed on appeal by decision of the Appellate Division of June 22, 1964. (84 N.J. Super. 252). Goldberg finally received the condemnation award in 1964, approximately three years after negotiations for the sale of the property were initiated by plaintiff.
Plaintiff claims a commission because he contends he brought the parties together, the condemnation was merely a legal device to clear the title question raised by provisions in plaintiff's deed, and ultimately defendant received more money for the property than he was willing to accept in the first place. Moreover, plaintiff contends that since the county and defendant entered into a stipulation of settlement in the condemnation proceedings fixing the value of the property at $285,000, it was a friendly condemnation proceeding which may be considered a substitute for an agreement of sale.
Ordinarily a broker earns his commission when he brings a buyer and seller together on terms acceptable to both, even though the terms are less favorable to the seller than *120 those initially offered or demanded by him. Loeb v. Peter F. Pasbjerg & Co., 22 N.J. 95, 100 (1956); Mack v. Revicki, 47 N.J. Super. 185 (App. Div. 1957). The provision calling for payment of the broker's commission "on closing of title" has been construed to be a designation of the time for payment and not a qualification of the broker's right to a commission, Winter v. Toldt, 32 N.J. Super. 443, 448 (App. Div. 1954), so that if the seller's default prevents the closing of title the broker's right to a commission cannot be defeated. Ibid.; Beckmann v. (Zinke's) Rainbow's End, Inc., 40 N.J. Super. 193 (App. Div. 1956). But these principles apply in cases where the buyer and seller have agreed on terms of sale acceptable to both. The seller here cannot be chargeable with a default because of the title question posed by the covenant in the deed from the City of Hackensack. At all times Goldberg's offer was qualified by reference to that provision in the title. On the other hand, the county required a release from the City of Hackensack of the covenants and conditions in Goldberg's deed, and this was impossible to obtain. (The taking of land by the county for a jail annex, a tax exempt purpose, had political significance in Hackensack. As noted at the outset, the city first opposed the right of the county to condemn the land, claiming that certain municipal purposes were being frustrated. After this contention was rejected, the city then pursued its claim for part of the condemnation award.) Thus, it was a condition imposed by the county which prevented the parties from reaching agreement in the first place. Surely the seller cannot be charged with default or wrongdoing because he would not or could not satisfy this condition. Plaintiff himself tried but could not obtain a release from Hackensack. Accordingly, the parties did not agree to terms that would have permitted a voluntary sale.
Plaintiff's right to a commission arises out of his contract with the seller. Unfortunately, in agreements for broker's commissions the obligations or expectations of the seller and broker are rarely spelled out with sufficient care. In dealing with the effusion of litigation from these relations it *121 has been left to the courts to interpret the conduct of brokers and sellers in a way which will do justice to the parties, endeavoring, of course, not to write a new commission agreement but to give effect to their intention. Mack v. Revicki, supra, 47 N.J. Super., at p. 193. Plaintiff offered services in producing a ready, willing and able buyer; he did not offer to produce a condemnation of the property by a public authority. Goldberg looked for a sale of the property, not for condemnation and extended litigation with Hackensack. In strict terms, the condemnation did not represent performance by plaintiff.
No New Jersey case has been found which considers whether the condemnation of property for a price equal to or greater than that authorized by the seller can be treated as the equivalent of a sale so as to require payment of a broker's commission. Few cases have been found in other states.
In Tyler v. Seiler, 76 Misc. 185, 136 N.Y.S. 394 (Sup. Ct. 1912), New York City acquired property of defendants through condemnation for $9500, although defendants had offered the property for sale to the city at $9000. Defendants had agreed to pay the broker a commission if he succeeded "in making a sale to the city." The commission was to be paid at the time the "purchase price" was paid by the city. The city authorized the purchase at $9,000, but would not take title because of a condition in a will affecting the property. The property was accordingly condemned. The court held that plaintiff had earned his commission. It reasoned that where a sale falls through because of a defect in the seller's title, the broker cannot be deprived of his commission. The court held that the broker had performed his undertaking by producing a buyer "willing to purchase upon the terms prescribed."
The facts reported in Tyler v. Seiler are scant. The case at bar may be distinguished by virtue of Goldberg's express qualification of the offer to sell subject to the covenant which created the title question. Thus Goldberg guarded against the charge of being in default because of a title defect, and *122 in these circumstances the result in Tyler should be rejected. The reasoning in Tyler is inapplicable, because Goldberg can't be charged with default, and the premise of Tyler, that the broker produced a buyer willing to purchase "upon the terms prescribed," is also inapplicable here.
In different circumstances it has been held that a broker is not entitled to a commission, because condemnation does not constitute a sale of property. Wilson v. Frederick R. Ross Inv. Co., 116 Colo. 249, 180 P.2d 226, 170 A.L.R. 1410 (Sup. Ct. 1947); Haigler v. Ingle, 119 Colo. 145, 200 P.2d 913 (Sup. Ct. 1948); Shaw v. Avenue D. Stores, Inc., 115 N.Y.S.2d 194 (Sup. Ct. 1952); see also Emerson C. Custis & Co. v. Tradesmens Nat. Bank & Trust Co., 155 Pa. Super. 282, 38 A.2d 409 (Super. Ct. 1944); Annotation, "Condemnation of property as affecting real-estate broker's right to compensation," 170 A.L.R. 1422 (1947).
In Haigler v. Ingle, supra, a real estate broker was authorized in writing to sell defendant's ranch properties in Colorado to the United States Government, defendant promising to pay 5% of the purchase price. Part of the property was taken in condemnation by the Federal Government for $150,000. Plaintiff contended that he was instrumental in bringing about the acquisition. The Supreme Court of Colorado denied recovery on the broad principle that the taking of lands by condemnation does not constitute such a sale as would ordinarily entitle a broker to a commission. The same court had held in Wilson v. Frederick R. Ross Inv. Co., supra, that condemnation is not a sale in these circumstances, primarily because it deprives the owner of his power to negotiate (a) whether he will sell all or part of the property, (b) the price, and (c) the date of possession. The court pointed out that after a condemnation proceeding is commenced the owner's choice is limited to agreeing on a value for the condemned property or contesting the case in court. The owner has lost his prime advantage in negotiation  the power to deprive another of possession of his particular property unless the owner's terms are met. The court noted, further, that where *123 a prospective purchaser is a governmental agency, the real estate broker can protect himself by covering the contingency of condemnation proceedings in his contract for a commission. The court added: "Only the very wary landowner will be able to protect himself from a broker who, after receiving information as to impending condemnation proceedings, may insert himself between the landowner and the condemnor." 116 Colo., at p. 262; 180 P.2d, at p. 232.
In condemnation proceedings an owner has a legal right to just compensation, but he loses control over the destiny of his property. In fact, N.J.S.A. 20:1-30 permits the condemning authority to abandon the condemnation before or within 20 days after an award is made by the commissioners, or on appeal, subject only to the owner's right to reasonable costs and attorneys fees. Englewood v. Veith Realty Co., Inc., 50 N.J. Super. 369 (App. Div. 1958). Thus, in the case at bar Goldberg could not control the closing date, the price and the ultimate disposition of the property, except as his rights could be enforced through litigation. Although the county and Goldberg did attempt to agree on the award after condemnation was ordered, they were unable to do so effectively because Hackensack was not a party to the settlement stipulation. Hackensack asserted that the property had a higher value than the county would stipulate. So long as Hackensack contested the value, the condemnation proceedings could not be terminated.
At the condemnation hearings the county offered proof of a value between $225,000 and $256,000; Goldberg's expert testified to a value of $381,000, and Hackensack's expert generously placed a value of $431,000 on the property. Finally, when the parties agreed to a value of $314,500, as a settlement of Goldberg's appeal from the commissioners' award, the county withdrew from the condemnation dispute. Then Goldberg was left to litigate with Hackensack the question of Hackensack's right to a part of the award. This is the very circumstance Goldberg sought to avoid in the offer to sell subject to the rights, if any, of Hackensack. Although the price *124 received approximately three years later was more than Goldberg's original offer, it was a price obtainable in full only after a trial and an appeal had disposed of Hackensack's claim. Goldberg had to pay taxes on property that could not be used effectively while the litigation was in process. Clearly, these burdens were involuntarily cast upon Goldberg by the county's condemnation action. This was not the result for which defendant had agreed to pay plaintiff a commission.
In these circumstances judgment will be entered in favor of defendant; and plaintiff's motion for summary judgment will be denied. It is not necessary to deal with other defenses raised by defendant, such as the claim that plaintiff breached his duty of loyalty to Goldberg by testifying as an expert on behalf of the county in the condemnation proceedings.