KAHN, J.
Appellant, H. Bruce Mclver (McIver), challenges a final summary judgment in favor of appellee, St. Joe Paper Company (St. Joe). Mclver is a licensed Florida real estate broker who sued St. Joe in 1996, alleging breach of contract, after St. Joe refused to pay him a commission in connection with the conveyance of property known as Topsail Hill (Topsail). In December 1995, St. Joe agreed to a Consent Final Judgment with the State, following the dismissal of a condemnation proceeding instituted by the State. By the terms of the Consent Final Judgment, the State, among other things, agreed to pay St. Joe $84 million for the Topsail property. Because we find that the circuit court erred in granting summary judgment on Mclver’s express contract claim, we reverse and remand that claim for further proceedings. We affirm the remaining issues on appeal.
In the order on appeal, the circuit judge found the following facts as undisputed:
On or before December 17, 1990, the Plaintiff [Mclver] orally contracted with the Defendant [St. Joe] to provide consulting services and to act as real estate agent and broker for the sale of approximately 600 acres, for which services the Plaintiff was to be paid 2% of the sale price. The primary potential purchaser was the State of Florida.
The Plaintiff worked diligently on behalf of the Defendant, managing to get *396 the property on a state list [Conservation and Recreation Lands (CARL) Trust Fund] that was a prerequisite for it being considered for purchase, and engaging in extensive negotiations with the State on behalf of the Defendant. A sales contract, however, was never entered into between the Defendant and the State, or any other purchaser, nor did the Plaintiff bring to the Defendant an offer from a purchaser able and willing to buy the property at the price Defendant indicated was acceptable.
Some time in June or July of 1994, the State’s representative, a Mr. Ivester, proposed a “friendly condemnation”, i.e., if the Plaintiff agreed to it, the State would institute eminent domain proceedings on the property. The thinking of Plaintiff and Defendant was that in such a proceeding, the State would most likely have to pay more money for the property than they were offering because the appraisals would be based upon the highest and best use of the property. The Defendant directed the Plaintiff to tell the state to go ahead with the condemnation.
The eminent domain proceedings were commenced in September of 1994. Although the Defendant welcomed the condemnation proceedings, formally, through its pleadings, it objected and contested the issue of public purpose for the taking. The trial court granted the Defendant’s Motion to Dismiss in December of 1995. Shortly thereafter, while a motion for rehearing was pending, the State and the Defendant entered into a stipulation, resulting in the entry of a consent final judgment which provided, in part, for compensation to the Defendant for its property in the amount of $84,000,000, exclusive of attorney’s fees and costs. It is based upon this figure, plus the value of certain non monetary benefits, that the Plaintiff claims a 2% commission or fee.
Based on these facts, the court determined that Mclver “can not recover from the Defendant on any theory advanced.” The court also made the following findings:
The most that can be said ... is that the Plaintiff was the procuring cause of the property being acquired by condemnation. Since the Plaintiff can point to no evidence in the record to show that the contract between the parties provided for a commission in the event of acquisition by condemnation, the Plaintiff is not entitled to his fee and there is thus no breach of contract.
[[Image here]]
Here the parties specifically had not agreed upon the purchase price. And, a willing defendant in a condemnation proceeding, is not the same as a willing seller with respect to determining if there has been a sale.... For better or for worse, once the proceedings were initiated against the Defendant’s property, it had no authority to withdraw from negotiations, or to refuse to sell the property to the State. True, the Defendant had successfully obtained an order of dismissal, but a motion for rehearing was pending, and an appeal was apparently contemplated, certainly possible. If the appeal time had run and the parties continued negotiations that resulted in a sale, the Plaintiff might have an argument. But that is not what happened.
The court entered summary judgment in favor of St. Joe.
“Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.... Thus, our standard of review is de novo.” Volusia County v. Aberdeen at Ormond Beach, 760 *397 So.2d 126, 130 (Fla.2000). We find that a genuine issue of material fact exists as to whether the State and St. Joe arrived at a “sales contract,” which would entitle Mclvr er to a commission pursuant to his express contract with St. Joe, thereby- precluding summary judgment on this claim.
Mclver asserts that St. Joe’s conveyance of Topsail to the State satisfies the criteria in Dauer v. Pichowski 413 So.2d 62 (Fla. 2d DCA 1982), for a “sale,” and thus a jury could find that the State acquired Topsail by a voluntary “sale” rather than by involuntary condemnation and McIver would be entitled to a commission pursuant to his express agreement with St. Joe. St.' Joe agrees that Dauer controls, but maintains that Dauer established a bright-line-test applicable to condemnation cases.
In Dauer, the Second District stated, “It is well settled that a . condemnation proceeding does not constitute a sale for 'purposes of the right to be paid a real estate commission.” 413 So.2d' at 63. The court further explained that “[e]ven where he is the procuring cause of property being acquired by condemnation, a broker can only recover a commission if there is a specific provision in the brokerage contract to this effect.” Id. at 63-64. The court cited several cases in support of its recitation, including Wilson v. Frederick R. Ross Investment Co., 116 Colo. 249, 180 P.2d 226 (1947), and Shaw v. Avenue D Stores, Inc., 115 N.Y.S.2d 194 (Sup.Ct.1952). See Dauer, 413 So.2d at 63-64. . The court summarized the law regarding why condemnation did not constitute a “sale” for purposes of a broker’s commission agreement:
The recurring theme of these cases -is that the property owner should not be required to pay a real estate commission under the normal brokerage contract when his property is condemned because in such circumstances he is not a willing seller.. In Wilson the court concluded that a transaction may be considered a -•sale for purposes of a broker’s-commission only when the owner [1] agrees on the property to be sold, [2] concurs as to ■ the time at which he is to give up possession, and [3] has the power to negotiate a satisfactory price. • Obviously, condemnation meets none of these tests.
Id. at 64.
The circuit court adopted St. Joe’s view of Dauer as setting forth a bright-line rule that once the State has initiated a condemnation action, any Conveyance that occurs while that action is pending does not constitute a sale for purposes' of a broker’s commission, Unle'ss the brokerage agreement provides for- such a contingency. We do not read Dauer so strictly. Rather, the three “tests,” or factors, set forth in Dauer should be examined in light of the facts in each case.
In Dauer, 'the circuit court had awarded the brokers, who were intervenors in’a condemnation suit, a ten percent commission on the final value of the property, to be established in the condemnation proceeding. See id. at 63. The Second District reversed, citing the law set forth above, and went on to analyze the particular facts of- that case. See id. at 64-65. Had the court intended to set forth a bright-line rule, such an extensive factual analysis would not have been necessary. Moreover, no party in Dauer raised the prospect that the conveyance might occur pursuant to a sale, rather, than by condemnation. Under our factual analysis in the present case, Mclver raised disputed issues that rendered his express contract claim inappropriate for summary judgment.
As Mclver asserts, a jury could find that the “condemnation” in this case actually did meet the three tests set forth in Dauer and thus constituted a “sale” for purposes of his broker’s commission. In particular, regarding the first “test,” Mclver present *398 ed testimony that St. Joe had agreed on the property to be sold (approximately 600 acres known as Topsail), had wanted to sell it to the State since at least 1988, and had initially proposed condemnation to the State. Mclver claims he proposed the idea of condemnation to St. Joe as a technique to increase the price. Mclver also testified that the State’s practice was to not condemn CARL lands unless the landowner agreed.
Second, as Mclver argues, under the “slow take” condemnation procedure used by the State, St. Joe retained full title and possession to its property until a judgment was entered and satisfied by the State. See § 73.111, Fla. Stat. (1993). The procedure did not reach that level in this case, however, because in Mclver’s view, St. Joe voluntarily transferred title and possession to the State pursuant to the Consent Final Judgment, entered into between the parties after St. Joe had obtained an order of dismissal and prior to the expiration of the rehearing period. Pursuant to the terms of the Consent Final Judgment, St. Joe retained title to the property until the State paid the agreed compensation.
Third, Mclver presented testimony from which a jury could conclude that St. Joe had the power to negotiate a satisfactory price during the condemnation proceeding. Testimony and evidence in the record indicates that, before the condemnation proceeding, the State offered to purchase Topsail for $34 million (in February 1993) and $25.7 million (in March 1994); St, Joe had rejected these offers and insisted upon a price of $50 million. The record also contains a letter dated July 20, 1994, from W.L. Thornton, Chairman of St. Joe Paper Company, to the Board of Trustees of the Internal Improvement Trust Fund, indicating that “[i]t is believed that full compensation will amount to more than several times the values being reported to you by your staff and appraisers” and “[i]f you would not acquire this property at three or four times your appraisal, then you should not pass the Proposed Resolution No. 94-2 [authorizing the taking].” In addition, Robert Scanlan, a highly experienced Assistant Attorney General handling the State’s condemnation case, testified in his deposition that negotiations continued between St. Joe and the State throughout the condemnation proceeding. Mr. Scan-lan further testified:
Q (By Mr. Huff) Because there were negotiations and because ultimately you arrived at a price that was a negotiated price, St. Joe, to say the least, had the power and the ability to argue fully for itself on price; didn’t it?
MR. CLEVELAND: Objection as to form, leading.
A (By the Witness) Mr. Thornton and Mr. Belin were very capable of arguing what they wanted, yes.
Q (By Mr. Huff) They weren’t exactly the prisoner at the bar in this case, unable to speak up for themselves; were they?
A No. I think we were in the position of the prisoner at the bar.
Pursuant to the Topsail Consent Final Judgment, the State paid St. Joe $84 million for the property.
Therefore, Mclver presented evidence from which a jury might conclude that the conveyance in this case satisfied the “tests” in Dauer and thus constituted a “sale” for purposes of his broker’s commission. Cf. Keyes Co. v. Fla. Nursing Corp., 340 So.2d 1254, 1256 (Fla. 3d DCA 1976) (reversing final summary judgment and explaining, among other things, “The language of the agreement that ‘(c)omission payable only when, as and if transaction is fully consummated’ does not refer to a sale, and an issue to be tried might well be whether, in fact, the eminent domain proceeding was a consummation of the transaction.”); Schwenn v. S. Goldberg & Co., *399 88 N.J.Super. 113, 210 A.2d 808, 812-13 (Law Div.1965) (entering summary judgment for defendant in action by broker claiming commission on property acquired by condemnation: “Plaintiff offered services in producing a ready, willing and able buyer; he did not offer to produce a condemnation of the property by a public authority. ' Goldberg looked for a sale of the property, not for condemnation and extended litigation with Hackensack. In strict terms, the condemnation did not represent performance by plaintiff.... This was not the result for which defendant had agreed to pay plaintiff a commission.”). As Mclver also points out in his brief, the Consent Final Judgment could be viewed as “a contract of sale and [was] perceived as such by the parties themselves.” See Arrieta-Gimenez v. Arrieta-Negron, 551 So.2d 1184, 1186 (Fla.1989) (“The consent judgment in question stems from an order issued by a court of competent jurisdiction approving and confirming the settlement agreement entered into by the parties. While it is true, as appellant argues, that a consent judgment is a judicially approved contract, and not a judgment entered after litigation, it is a judgment nonetheless.” (emphasis added)); Div. of Admin, v. Tsalickis, 372 So.2d 500, 502 (Fla. 4th DCA 1979) (“The judgment here, in effect, is a consent final judgment and as such the wording is a binding contract.”).
Accordingly, because disputed issues of material fact exist, the trial court should not have entered summary judgment on Melver’s express contract claim. This point on appeal is REVERSED and the case REMANDED for further proceedings. The remaining points on appeal are AFFIRMED without discussion.
WEBSTER and DAVIS, JJ., concur.